69 F.3d 537
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HMS PROPERTY MANAGEMENT GROUP, INC., and Equitable Partners,
Inc., Plaintiffs-Appellants,
v.
Philip S. MILLER et al.,
Federal Deposit Insurance Corporation, as receiver for
Cypress Savings Association Defendant-Appellee.
 Nos. 94-3668, 94-3669.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1995.
 
 Before: JONES and DAUGHTREY, Circuit Judges; and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants HMS Property Management Group, Inc. ("HMS") and Equitable Partners, Inc. ("Equitable") appeal from an order of the district court granting the defendant-appellee Federal Deposit Insurance Corporation ("FDIC") motion to dismiss the appellants' third amended complaint. Appellants variously claim that the FDIC breached a sale agreement for real properties, a proposed modification to the sale agreement, a management agreement, and is otherwise liable to them on the basis of promissory estoppel. The issue this appeal presents is whether the district court properly determined that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. For the following reasons, the Court affirms the district court's dismissal of appellants' claims as to the breach of the sale agreement, the breach of the proposed modification to the sale agreement, and promissory estoppel. However, the Court remands appellants' claim as to the breach of the management agreement for further proceedings.
 
 I.
 
 2
 Appellants are each closely held corporations that build, buy, sell, and manage hotels and condominiums. Their principal and president is W. David Temel. The Federal Deposit Insurance Corporation, as successor to the Federal Savings and Loan Corporation ("FSLIC"), is the receiver for the Cypress Savings Association ("Cypress"), the mortgagee of the three properties involved in this action, a motel, hotel, and condominium development (collectively the "properties"). Cypress foreclosed on the properties when the owners of the properties defaulted. Later, Cypress itself entered a receivership under FSLIC, to which the FDIC succeeded.
 
 
 3
 The owners of the properties, defendants Richfield Associates, Ltd. ("Richfield"), Claridge Manor Company, Ltd. ("Claridge"), and Universe Boulevard, Inc. ("Universe") (collectively the "Sellers"), entered into a Sale Agreement with Equitable as purchaser for the properties. The Sale Agreement provided that the FSLIC, as receiver for Cypress, would assign to Equitable all of its interest as receiver of Cypress in the three properties and execute certain releases in exchange for $8,300,000 of the total $10,500,000 sales price. The Sale Agreement required closing by September 30, 1989. On June 14, 1989, a "special representative" of the FSLIC accepted the Sale Agreement.
 
 
 4
 On August 9, 1989, Congress abolished the FSLIC and substituted the FDIC in its place. Accordingly, the FDIC became the receiver for Cypress. After the substitution but before the closing, asbestos was discovered at one of the properties. Allegedly, as a result of the asbestos and the agency changeover, Equitable did not exercise its right to close under the Sale Agreement, did not tender performance on or before September 30, 1989, and, consequently, the sale did not close by September 30, 1989.
 
 
 5
 In a letter written by Temel and dated October 5, 1989, a modification to the Sale Agreement was proposed, extending the closing date and providing for the sale of only two of the properties for $3,000,000, subject to the FDIC's written approval. The FDIC allegedly indicated that it would soon approve the proposed modification. However, the FDIC did not approve the proposed modification in any written document.
 
 
 6
 Equitable alleges that based on the proposed modification it obtained feasibility and environmental studies and incurred loan commitment fees. Further, HMS, which is not a party to the Sale Agreement, alleges that, based on the representations of the FDIC, it assumed liability for Equitable's loan commitment fees and entered a Management Agreement with the FDIC for one of the properties located in Jefferson City, Missouri. Appellants also allege that in a related Missouri state court action, a judge, based on the FDIC's representations, ordered HMS to take immediate possession and management of the property. However, neither the judge's order nor the Management Agreement explicitly referenced the Sale Agreement or any proposed modification of it. Equitable and HMS further claim that they expended over $1,000,000 and exposed themselves to personal liability to obtain a franchise license for the property.
 
 II.
 
 7
 Prior to the present action, the FDIC and Equitable were parties to a declaratory action in Florida, which determined that the FDIC was entitled to certain escrow funds for the failure of the Sale Agreement to close by September 30, 1989, and that the FDIC was not bound by any proposed modification to the Sale Agreement. Equitable appealed and the appellate court affirmed.
 
 
 8
 HMS and Equitable originally filed this action in an Ohio state court on July 3, 1990. The FDIC removed to federal court on August 6, 1990. On August 23, 1993, after two previous motions, appellants moved for the third time to amend their complaint and dismissed three of the original defendants, leaving only the FDIC and the Sellers. On September 13, 1993, the district court granted plaintiffs' third motion to amend their complaint.
 
 
 9
 The third amended complaint contained five counts. Count I alleged that the FDIC breached the Sale Agreement by failing to document, execute, and close. Count II alleged that the FDIC breached a proposed modification to the Sale Agreement that it represented it would accept but did not. Count II also alleged that Equitable relied on the FDIC representations to its detriment by forbearing its right to close under the Sale Agreement and expending $130,000 in loan commitments and $50,000 in feasibility and environmental studies. Count III alleged that the FDIC breached the Management Agreement by failing to pay for or reimburse HMS for goods that HMS purchased to manage the property. Further, Count III alleged that HMS entered the Management Agreement based on the FDIC's representations to the Missouri state judge who then ordered HMS to manage the Jefferson City property. As a result, HMS and Equitable expended over $1,000,000 to obtain a license agreement for the property. Count IV alleged additional damages related to the FDIC's breach of the Sale Agreement consisting of mortgage loan commitment fees of $105,000. Count V alleged a claim of promissory estoppel in which Equitable and HMS reasonably relied on the FDIC's representations that the FDIC did not fulfill resulting in appellants' damages.
 
 
 10
 On September 30, 1993, the FDIC moved to dismiss the third amended complaint. On March 15, 1994, the district court granted the FDIC's motion and dismissed each count of appellants' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 III.
 
 11
 When reviewing a motion to dismiss, a court must accept all well-pleaded allegations of the complaint as true and construe them in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, it need not accept conclusory allegations or indulge in unreasonable inferences. Blackburn v. Fisk Univ., 443 F.2d 121, 124 (6th Cir.1971). Further, a court may disregard allegations contradicted by facts established in exhibits attached to the pleading. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987). Moreover, it is not proper to assume facts that a plaintiff has not plead. Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).
 
 IV.
 
 12
 For the following reasons, this panel will affirm the district court's dismissal of Counts I, II, IV, and V and will remand Count III for further proceedings.
 
 
 13
 As to Count I, it is clear that Equitable cannot state a claim for breach of the Sale Agreement because the FDIC is simply not a party to the Sale Agreement. The FDIC was neither the buyer nor the seller of the subject properties. It was merely the receiver of the interests of Cypress, the mortgagee of the properties, and had only ministerial and perfunctory duties under the Sale Agreement to execute releases and assignments. Appellants' claim that the FDIC had a duty to deliver marketable title is not supported in the record. The Sale Agreement clearly required the Sellers to do so, not the FDIC. Although Count IV is alleged separately, it essentially claims damages for breach of the Sale Agreement and, therefore, fails to state a claim for the same reason as Count I.
 
 
 14
 As to Count II, the proposed modification as reflected in Temel's letter of October 5, 1989, clearly contemplated both approval from the FDIC and reduction of the agreement to writing. A court can properly disregard allegations in a pleading that are clearly contradicted by attached exhibits. Durning, 815 F.2d at 1267. Further, where the parties contemplate that a modification must be approved, no reliance on the modification is justified until it is approved. General Motors Corp. v. Keener Motors, Inc., 194 F.2d 669 (6th Cir.1952). It is clear that appellants have not pled and cannot plead that the FDIC approved modification of the Sale Agreement or that it was reduced to writing.
 
 
 15
 Moreover, the proposed modification is also unenforceable under the Ohio statute of frauds, Ohio Revised Code Section 1335.05, which requires written agreements for enforceable interests in land. Professional Investigations & Consulting Agency, Inc. v. Kingsland, 591 N.E.2d 1265, 69 Ohio App.3d 753 (Ohio Ct.App.1990).
 
 
 16
 Count V fails to state a claim of promissory estoppel because, as discussed above under Count II, there was no justifiable reliance. Moreover, promissory estoppel is not available to enforce the FDIC's alleged representations. If an oral promise relating to an interest in real property is unenforceable under the statute of frauds, then an oral representation to accept the "proposed modification" to the Sale Agreement is similarly unenforceable.
 
 
 17
 Besides breach of the Management Agreement, Count III reflects a mixture of various legal theories including detrimental reliance, misrepresentation, unjust enrichment, and agency-principal analysis. It also realleges the breach of the proposed modification of the Sale Agreement. The court below understandably characterized Count III as a claim alleging that the Management Agreement was executed in reliance on the FDIC's representation that it would accept the proposed modification to the Sale Agreement and then dismissed it for the same reasons that it dismissed Counts I and II. However, now on appeal, appellants clarify that Count III simply alleges that the FDIC breached the Management Agreement in refusing to reimburse HMS for expenses incurred in connection with the Management Agreement. Accordingly, insofar as the court below dismissed Count III because it was predicated on the proposed modification to the Sale Agreement, it will be reversed and remanded for further proceedings.
 
 
 18
 Accordingly, this panel AFFIRMS the lower court's dismissal of Counts I, II, IV, and V and REMANDS Count III for further proceedings consistent with this Opinion.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation