## CHRYSALIS HEALTH CARE, INC.

v.

## BROOKS.

Hamilton County Municipal Court.

93–CV–25531.

Decided June 28, 1994.

*Mason, Slovin & Schilling Co., L.P.A.,* and *Richard D. Schilling,* for plaintiff. *Freking & Betz* and *Peter Burr,* for defendant.

MARK P. PAINTER, Judge.

This decision is the result of a trial held before this court on March 23, 1994, after which post-trial memoranda were filed. Both counsel are to be commended both for the trial, which concentrated on the facts actually in dispute, and the arguments of law, which were well-researched, though under a handicap which will become clear. At issue is the enforceability of a covenant not to compete clause in an employment agreement entered into by plaintiff and defendant.

## I

### Facts

Plaintiff, Chrysalis Health Care, is an Ohio corporation doing business as Geriatric Nursing Care, with its principal place of business located in Cincinnati. Plaintiff provides home geriatric nursing services to its clients. Defendant, Tina Brooks, who has worked in the health care field for the last twenty-seven years, began employment with plaintiff in an at-will capacity in January 1992 as a geriatric nurse's aide. She worked part-time in the evenings and on weekends providing health care to various clients of the plaintiff. At that time, defendant was also working full-time at The Christ Hospital and part-time at Clovernook Nursing Home and continued to do so after beginning work with plaintiff. Plaintiff was fully aware that defendant was working for and continued to work for these other local health care providers.

During June, July, and August 1992, defendant cared for one Shirley Casper, a client of plaintiff. Defendant's last contact with the Casper account was on August 18, 1992. Sometime in September 1992, plaintiff lost the Casper account to a health care provider known as Nurses and Company. Also in September

1992, defendant was hired by Nurses and Company and continued working for The Christ Hospital and plaintiff.

In December 1992, plaintiff drafted an employment agreement that it asked its employees to sign. The terms and conditions of employment included in the agreement were identical to those under which the defendant was currently working, except that the employment agreement included a covenant not to compete and a liquidated damages provision for a breach of that covenant. Employees were allegedly told that they did not have to sign the agreement and the only repercussion of not signing it would be that employees would not be given priority job assignments. When defendant was asked to sign the employment agreement, she questioned the non-compete language. Defendant was currently working for two other health care providers and she was concerned about the implications of the non-competition clause. Defendant alleges and plaintiff disputes that Diane Seiwert, plaintiff's president, and Sharon Griffin, plaintiff's office manager, told her not to worry about the non-compete clause, that it was "just a formality" and plaintiff would never enforce it.

In January 1993, plaintiff learned that defendant had been providing care for Mrs. Casper through Nurses and Company since the first of the year. In April 1993, plaintiff terminated defendant. Plaintiff then brought this action against defendant for breaching the covenant not to compete clause of the employment agreement and has requested liquidated damages in the sum of $5,000. Defendant has counterclaimed, alleging promissory estoppel and fraud in inducing the defendant to sign the employment agreement.

## II

### Discussion

#### A. Consideration

The employment agreement signed by the defendant contained a covenant not to compete. The covenant not to compete states the following: "Employee agrees that during Employee's employment with Employer and for a period of three years after termination of Employee's employment with Employer in any manner, whether with or without cause, Employee will not, within a fifty mile radius of Employer's principal place of business in Cincinnati, Ohio, directly or indirectly acquire ownership of, or an interest in any business of providing health care services or in any other business in competition with Employer. Further, during Employee's employment with Employer and for a period of ninety days following termination in any manner, whether with or without cause, Employee shall not work for, advise, consult with, serve or assist in any way, directly or indirectly, any Client, Patient/Client or party whose business is in any way

connected with health care services or in any way competitive with the activities or business of employer."

The next paragraph of the employment agreement contains a liquidated damages provision for a violation of the covenant not to compete. The liquidated damages provision states: "Employee agrees that in the event of violation by Employee of the agreement against competition contained in this agreement, Employee will pay as liquidated damages to Employer the sum of five thousand dollars ($5,000.00) plus attorney fees incurred in collecting such sum. It is recognized and agreed that damages in such event would be difficult or impossible to ascertain, though great and irreparable, and that this agreement with respect to liquidated damages shall in no event disentitle Employer to injunctive relief."

█ The first issue to be resolved is whether sufficient consideration exists to support the employment agreement. A fundamental principle of contract law is that mutual consideration is necessary to support a contract. The question here is whether continued employment alone constitutes sufficient consideration to support an employment agreement containing a covenant not to compete or whether additional consideration is needed. To date, the Supreme Court of Ohio has declined to address the question. However, at least two Ohio appellate courts have ruled on the issue, including one district which ruled both ways within a six-month period.

In *Nichols v. Waterfield Financial Corp.* (1989), 62 Ohio App.3d 717, 577 N.E.2d 422, jurisdictional motion overruled (1989), 45 Ohio St.3d 710, 545 N.E.2d 905, the Summit County Court of Appeals held that continued employment alone was sufficient consideration to modify an oral at-will contract. In *Nichols,* plaintiff was hired as an at-will employee. After he had been with the company for a period of time, plaintiff signed a letter stating that upon termination, he would not be entitled to certain sales commissions. Later, plaintiff was fired. After termination, plaintiff requested the commissions but the request was denied because of the letter he had signed. The plaintiff brought suit and the trial court awarded plaintiff the commissions. On appeal, the *Nichols* court reversed the trial court saying:

"It is undisputed that [plaintiff] was employed under an at-will contract. Absent the application of equitable doctrines such as detrimental reliance, the terms and conditions of an at-will contract can be prospectively changed without consideration. See Annotation (1975), 63 A.L.R.3d 539, 544–545.

"Furthermore, we find that even if consideration were required to modify the at-will employment contract, that [plaintiff's] *continued employment was sufficient consideration* to modify the contract." (Emphasis added). *Nichols* at 719,

577 N.E.2d at 423, citing *O'Brien v. Prod. Eng. Sales Co.* (Jan. 8, 1988), Montgomery App. No. 10417, unreported, 1988 WL 2436; *Wellendorf v. Local Union 377* (June 7, 1988), Mahoning App. No. 87 C.A. 37, unreported, 1988 WL 59811. See, also, *Paglia v. Heinbaugh* (Feb. 25, 1994), Trumbull App. No. 93–T–4838, unreported, 1994 WL 110892.

Then, six months later, the same court, albeit a somewhat different panel, held that continued employment did not constitute sufficient consideration to support an employment agreement containing a covenant not to compete. In *Prinz Office Equip. Co. v. Pesko* (Jan. 31, 1990), Summit App. No. CA–14155, unreported, 1990 WL 7996, the defendant was hired to sell office supplies and furniture. At the time of her initial hire, she was told that for the first three months she would be a probationary employee at the end of which she would have to sign an employment agreement. One month after the probationary period had expired, defendant signed an employment agreement containing a non-competition clause. After five years, defendant left plaintiff and began working for a competitor. Plaintiff then brought suit to enforce the non-competition clause. Defendant argued the non-competition clause was not enforceable because the employment agreement was not supported by sufficient consideration. Without acknowledging or discussing its previous decision in *Nichols, supra,* the court agreed with defendant and simply stated that "Ohio does not recognize continued employment as valid consideration, and a non-competition agreement based upon continued employment is unenforceable." Unfortunately, the Summit County Court of Appeals does not offer any analytical distinction between *Prinz* and *Nichols,* and instead of making a clear and concise rule of law, the court's decisions cloud and confuse an already opaque area.

The Stark County Court of Appeals has also addressed the issue of whether continued employment is sufficient consideration to support an employment agreement modifying an at-will employment relationship. *Copeco, Inc. v. Caley* (1992), 91 Ohio App.3d 474, 632 N.E.2d 1299, motion to certify record overruled (1994), 69 Ohio St.3d 79, 630 N.E.2d 662. The *Copeco* court, relying on *Nichols, supra,* held that continued employment alone was sufficient consideration to support a covenant-not-to-compete clause. In *Copeco,* defendants had been traditional at-will employees for plaintiff. Defendants were then presented with an employment contract containing a covenant not to compete. The employment contract did not modify any other terms of the employment arrangement.

The *Copeco* court acknowledged the *Prinz* decision but found its reasoning flawed:

"Finally, we note the *Prinz* court * * * made the following distinction:

" 'A noncompetition agreement, like any other contract, must be supported by consideration. Adequate consideration is present where the restrictive covenant

is entered into by the employee at the time the employee accepts employment. * * * In such a situation, a valid exchange of promises occurs: the employee promises not to compete upon termination of employment and the employer promises to hire the employee. Where the restrictive covenant was not agreed to by the employee upon his or her initial hire, it must be supported by something more than a promise of continued employment. * * *'

"We deem the above to be a distinction without a difference. As a practical matter every day is a new day for both employer and employee in an at-will relationship. As stated *supra*, we see no substantive difference between the promise of employment upon initial hire and the promise of continued employment subsequent to 'day one.'" *Copeco*, 91 Ohio App.3d at 477–478, 632 N.E.2d 1299, 1301.

Judge Hoffman pointed out the inconsistency of the two Summit County Court of Appeals' opinions, in perhaps more temperate language than that employed here.

At that point the status of the law in Ohio could be stated as thus: The Summit County Court of Appeals in *Prinz* had ruled that continued employment in and of itself was *not* sufficient consideration, although it had ruled the opposite way six months previously, and the Stark County Court of Appeals in *Copeco* had ruled that it was. Now enter, or rather exit stage left, the Ohio Supreme Court.

The *Copeco* court certified its decision to the Supreme Court of Ohio as being in conflict with the *Prinz* decision. On April 27, 1994, while our case was under submission, the Ohio Supreme Court dismissed the appeal stating that after examining the *Prinz* and *Copeco* cases, the court found that the judgments were not in conflict. *Copeco, Inc. v. Caley* (1994), 69 Ohio St.3d 79, 630 N.E.2d 662. The Supreme Court had, likewise, earlier refused to accept the *Nichols* case. The facts of *Prinz* and *Copeco* are almost identical. At issue in each case is whether continued employment alone is sufficient consideration to support an employment agreement containing a non-competition clause. Yet *Prinz* held that continued employment is not sufficient consideration while *Copeco* held that continued employment is sufficient consideration. It is unfathomable to this court how the Ohio Supreme Court cannot see a conflict, especially considering that counsel herein, and probably all over Ohio, continue to cite these cases as authority for obviously conflicting positions.

Authorities from other jurisdictions are also not in agreement as to whether continued employment alone constitutes sufficient consideration or whether separate consideration is required to support an employment agreement containing a covenant not to compete after an employment relationship has begun. See Spector & Finkin, Individual Employment Law and Litigation (1989), Section 8.02. However, the treatise goes on to criticize the position that continued

employment alone constitutes sufficient consideration. "The better view, even in the at-will relationship, is to require additional consideration to support a restrictive covenant entered into during the term of employment. This recognizes the increasing criticism of the at-will relationship, the usually unequal bargaining power of the parties, and the reality that the employee rarely 'bargains for' continued employment in exchange for a potentially onerous restraint on the ability to earn a living." *Id.*, Section 8.02 at 450.

This court does not necessarily agree with the above position, and is inclined to agree with Judge Hoffman's analysis that in the at-will situation every day is a new day. Since the employee could be terminated for no reason, requiring an employee to sign an agreement is simply a condition of the employee's "new" period of employment. Also, as the above treatise indicates, some courts have made distinctions between covenants not to compete and other prospective changes in the at-will relationship. Many cases involve the employee seeking to hold the employer to a promise, and the employer using lack of consideration as a defense. All of these issues are ripe for the Ohio Supreme Court to offer some guidance to courts and counsel.

With all of this in mind and without deciding whether continued employment alone constitutes sufficient consideration, this court holds that separate consideration exists in this case to support the employment agreement containing the covenant not to compete. While there was some conflict in the evidence, the court finds the employees promised not to compete in exchange for the promise of receiving better and higher priority job assignments. This exchange of promises is sufficient consideration to support the employment agreement. Therefore, the employment agreement entered into by the plaintiff and defendant does not fail for lack of consideration.

## B. Interpretation of Non-competition Clause

Since the employment agreement is supported by valid consideration, the next step, then, is to interpret the non-competition clause. When interpreting the words in a contract, " '[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' " *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 54, 544 N.E.2d 920, 923, quoting *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. Of course, any ambiguity in a contract must be construed against the party who drafted it. *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 40 O.O.2d 87, 228 N.E.2d 304.

The non-competition clause states in pertinent part: "Further, during Employee's employment with Employer and for a period of ninety days following termination in any manner, whether with or without cause, Employee shall not work for, advise, consult with, serve or assist in any way, directly or indirectly, any *Client, Patient/Client or party* whose business is in any way connected with health care services or in any way competitive with the activities or business of employer." (Emphasis added.)

Defendant makes the argument that the last section of the clause which states, "a party whose business is in any way connected with health care services or in any way competitive with the activities or business of [the] employer," should be ignored on the basis that the plaintiff knew that defendant worked for other health care providers and never intended to enforce that language. The only portion of the clause remaining then states that an "employee shall not work for, advise, consult with, serve or assist in any way, directly or directly, any client, [or] patient/client." Defendant then argues that since *client* or *patient/client* is not modified, the only reasonable interpretation is that *"client* or *patient/client* refers to *current* clients of plaintiff." Finally, defendant argues that when defendant worked for Mrs. Casper, Mrs. Casper had left plaintiff and was not a *current* client of plaintiff but rather a *former* client of plaintiff and therefore defendant's conduct did not violate the plain meaning of the non-competition clause.

This court commends defendant's counsel for the creativity of his argument. Unfortunately, this court does not find it persuasive. It is certainly reasonable to interpret client and patient/client as referring to only *current* clients or patients since there is no temporal modification to the term client or patient/client. Nonetheless, this court will interpret the plain meaning of the entire non-competition clause, not just a portion of it. When the entire non-competition clause is given its plain meaning, the clause clearly prohibits defendant from working for another health care provider within ninety days of termination, whether or not that health care provider is in competition with the plaintiff. It is undisputed from the facts that defendant worked for other health care providers, both while she worked for plaintiff and within ninety days of being terminated. Therefore, defendant's conduct is in violation of the plain and literal meaning of the non-competition clause, were the court to enforce it. See Part C, *infra.*

## C. Promissory Estoppel

Defendant has brought a counterclaim against plaintiff under the theory of promissory estoppel based on promises and representations made to her by plaintiff's president, Diane Seiwert, and office manager, Sharon Griffin. Actually,

promissory estoppel is more appropriately characterized as a defense and this court will treat defendant's claim as such.

Defendant invokes promissory estoppel, seeking enforcement of Diane Seiwert's verbal assurances that the non-competition clause would not be enforced. When the employment agreement was presented to defendant, she questioned the language of the non-competition clause. Of concern to her was the fact that she was currently working for two other health care providers, namely The Christ Hospital and Nurses and Company. When she presented her concerns to Diane Seiwert and Sharon Griffin, she alleges, and they deny, that they told her not to worry about the non-competition clause—that it was just a formality and that it would not be enforced.

■ Under the doctrine of promissory estoppel, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 265, 483 N.E.2d 150, 154, quoting 1 Restatement of the Law 2d, Contracts (1981) 242, Section 90; see, also, *Uebelacker v. Cincom Sys., Inc.* (1988), 48 Ohio App.3d 268, 272, 549 N.E.2d 1210, 1217.

■ This court finds by a preponderance of the evidence that plaintiff promised defendant that the non-competition clause would not be enforced and reasonably expected that promise to induce defendant to sign the employment agreement. Plaintiff knew defendant was working for other health care providers when defendant began working for plaintiff. Defendant has worked full-time for The Christ Hospital for nearly twenty-seven years. At the time when defendant was asked to sign the agreement, she was working for The Christ Hospital and the plaintiff was fully aware of that fact. This lends credibility to defendant's statement that plaintiff's agents assured her that the clause would not be enforced against her. Surely, defendant would not have signed the agreement without such assurances because its explicit terms would have prevented her from maintaining her twenty-seven-year full-time employment. Therefore, even though defendant's conduct violated the non-competition clause, plaintiff is estopped from enforcing the clause against defendant because of the representations made to defendant by plaintiff's agents.

D. Reasonableness of Non-competition Clause and Liquidated Damages

■ The parties, in their closing arguments, raise other issues related to non-competition clause. First, the parties argue over the reasonableness of this particular non-competition clause. It is clear that the court has the power to

modify non-competition clauses to ensure that they are no more restrictive than necessary to protect the legitimate interests of the employer. See, generally, *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544. Many other issues would be involved in the enforcement of the non-competition clause, including the duration, geographical limits, and the exact conduct sought to be prohibited. The agreement is obviously overbroad, in that the employee is not only prohibited from working for a business that is "in any way competitive" with plaintiff's business but also from being employed *at all* in the health care industry. Covenants which place a restraint upon an employee's ability to earn a livelihood can only prohibit employment when it harms the interest of the former employer. *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544. However, since plaintiff's complaint fails because of the application of the doctrine of promissory estoppel, this court need not reach these issues.

Second, the parties, in their closing arguments, debate the enforceability of the liquidated damages provision. Likewise, since plaintiff's claim fails on the basis of promissory estoppel, the issue of the enforceability of the liquidated damage provision is moot.

## E. Fraud

■ Finally, defendant has brought a counterclaim on the grounds that plaintiff's actions constitute common-law fraud. In order to prevail on the theory of common-law fraud defendant must prove the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 260, 22 O.O.3d 422, 426, 429 N.E.2d 456, 459.

The elements of common-law fraud are extremely similar to the elements of promissory estoppel. However, since the defendant prevails on the promissory estoppel doctrine, defendant has not suffered any actual damages. Therefore, defendant has failed to prove the last element of common-law fraud and defendant's claim fails. Nonetheless, defendant, in her closing argument, requests that this court also award punitive damages and attorney fees. For reasons outlined below, this court declines to do so.

■ "In each case of alleged fraud the [defendant], in order to be awarded punitive damages, must establish not only the elements of the tort itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or

egregious." *Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus. "R.C. 2315.21(B) and (C) mandate that punitive damages not be awarded unless the [defendant] establish[es] by *clear and convincing evidence* that the wrongdoing of [plaintiff] demonstrated 'malice, aggravated or egregious fraud' which results in actual damages." (Emphasis added.) *Grodhaus v. Burson* (1991), 71 Ohio App.3d 477, 479, 594 N.E.2d 717, 718.

Defendant has failed to show by clear and convincing evidence that plaintiff acted with actual malice or ill-will when plaintiff made the representations to defendant that plaintiff would not enforce the non-competition agreement, even though later plaintiff changed its course and sued defendant. Plaintiff's agents dispute the exact language of any such representations, and the court has, on a *preponderance of the evidence standard,* found that they were sufficient to defeat plaintiff's claim. Nor did defendant show by clear and convincing evidence that the representations made were so egregious as to warrant punitive damages. The mere fact that plaintiff made representations, which later turned out to be untrue, even if the statements were intentionally made, is not enough to award punitive damages. "Intentionally made false representations are not sufficient to justify punitive damages unless they are relatively egregious." *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 70, 7 OBR 76, 82–83, 454 N.E.2d 158, 166.

Finally, "[a]ttorney fees are generally not proper damages, absent statutory authority or recovery for punitive damages." *Stuart, supra,* 7 Ohio App.3d at 70, 7 OBR at 82–83, 454 N.E.2d at 166, citing *Sorin v. Warrensville Hts. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. As already discussed, defendant has not shown that she is entitled to punitive damages. Defendant does not cite any statutory authority entitling her to attorney fees. Also, defendant's conduct, while not found to be violative of the employment agreement because of plaintiff's representations, was not totally blameless. Therefore, defendant is not entitled to punitive damages or attorney fees.

### III

### Conclusion

This court finds that there was sufficient consideration to support the employment agreement containing the covenant not to compete. Defendant's conduct is in violation of the non-competition clause of the employment agreement. However, the court will not enforce the non-competition agreement against the defendant on the grounds that plaintiff is estopped from enforcing the non-competition

clause against defendant. Finally, defendant has not suffered any actual damages and has not shown by clear and convincing evidence that plaintiff made false representations with actual malice or ill-will and therefore is not entitled to punitive damages or attorney fees.

*Judgment for defendant
on plaintiff's complaint.*

*Judgment for plaintiff
on defendant's counterclaim.*