OPINION
Plaintiff-appellant, Willis Refrigeration, Air Conditioning 
Heating, Inc. ("Willis"), appeals the decision of the Clermont County Court of Common Pleas denying its motion for preliminary injunction against defendants-appellees, Floyd E. "Jack" Maynard, Jr. ("Maynard"), John Isaacs ("Isaacs"), and Maynard Heating 
Cooling Company ("Maynard Heating Cooling").
Willis is an Ohio corporation which provides heating, ventilation, and air conditioning ("HVAC") sales and services primarily to builders of new residential homes. While Willis did not have an exclusive contract with any builder, Willis was the exclusive supplier of HVAC services to many of those builders until the fall of 1998. From 1962 to 1992, Maynard was the owner of Willis. In 1992, Maynard transferred all of his interest in Willis primarily to his son, Floyd M. "Mike" Maynard ("Mike Maynard"). Following the transfer, Maynard remained an employee of Willis. In November 1997, Mike Maynard sold his entire interest in Willis to a Texas corporation, Group Maintenance America Corp. ("Group MAC"). Mike Maynard remained in a management position pursuant to a written contract while his father, Maynard, stayed on as an at-will employee. Maynard did not sign a covenant not to compete.
Early September 1998, Mike Maynard's employment with Group MAC ended under contested circumstances. On September 16, 1998, Maynard was terminated. In October 1998, Maynard started his own HVAC company, Maynard Heating Cooling. Maynard eventually hired five former Willis at-will employees, including Isaacs and Mark Ernst. Maynard and Isaacs are both officers and shareholders of Maynard Heating Cooling.
The record shows that Ernst started working for Willis in September 1991. On December 7, 1993, he signed a nondisclosure and nonsolicitation agreement. Ernst resigned on October 28, 1998 and went to work for Maynard. Isaacs first started working for Willis in 1993. In 1995, he left Willis to work for a competing company. On March 5, 1996, Isaacs was rehired by Willis. That same day, Isaacs signed a nondisclosure and nonsolicitation agreement. Isaacs resigned on October 22, 1998 and went to work for Maynard.
Isaacs' agreement stated that Isaacs acknowledged that "all information obtained, produced, or developed during the course of his employment is considered to be the private and confidential information of [Willis]." The agreement further restricted Isaacs, both during and after employment with Willis, from "directly or indirectly" (1) making known or divulging any of this confidential information, (2) calling on, soliciting, taking away, or attempting any of these actions against any Willis customers, either for himself or for another, for one year from the date of termination of employment, and (3) soliciting, inducing or attempting to solicit or induce any employees of Willis to either divulge confidential information or leave Willis' employment for himself or another organization. The agreement signed by Ernst is identical to Isaacs' agreement.
On December 10, 1998, Willis filed a complaint against appellees alleging misappropriation of trade secrets, breach of fiduciary duty, interference with business relationships, unfair competition, conspiracy, conversion, and deceptive trade practices. That same day, Willis also filed a motion for a temporary restraining order and preliminary injunction. The motion sought to enjoin appellees from (1) obtaining, using, or disclosing Willis' trade secrets or other confidential information, (2) soliciting or servicing additional business from construction companies or builders that were customers of Willis as of September 9, 1993, and (3) soliciting or contacting any current Willis employees. On December 14, 1998, the trial court issued a temporary restraining order, preventing appellees from soliciting or initiating contact with Willis employees pending the trial court's decision on the preliminary injunction motion. Such motion was heard on March 11 and 12, 1999. By decision filed April 13, 1999, the trial court denied Willis' motion for preliminary injunction. Willis timely filed this accelerated appeal and raises two assignments of error.
In its first assignment of error, Willis argues that the trialcourt erred in not finding the nondisclosure and nonsolicitationagreements presumptively valid for preliminary injunction purposes.
In its motion for preliminary injunction, Willis claimed,inter alia, that Isaacs had breached his agreement and that Maynard and his company had tortiously interfered with both Isaacs' and Ernst's agreements. In denying Willis' motion, the trial court first stated that it was "inappropriate for the Court to make a decision as to the contract's validity at this time because the purpose of a preliminary injunction is to preserve the status quo pending trial — here, to prevent [appellees] from soliciting or causing others to solicit Willis' customers pending determination of [Willis'] breach of contract and tortious interference claims."
The trial court then stated that in light of "a serious lack of accord" among Ohio appellate courts as to whether continued employment alone constitutes consideration for a restrictive covenant, it could not find that Willis was likely to prevail on the merits of its claims.
The function of a preliminary injunction is to maintain the status quo pending trial on the merits. Consun Food Industries,Inc. v. Fowkes (1991), 81 Ohio App.3d 63, 69. In determining whether to grant a preliminary injunction, a trial court must consider whether (1) there is a substantial likelihood that the movant will prevail on the merits, (2) the movant will suffer irreparable injury if the injunction is not granted, (3) third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by granting the injunction. Vanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co., Gen. Commodities Div. (1996), 109 Ohio App.3d 786,790. Each element, if found by the court, must be established by clear and convincing evidence. Id.
It is well-established that the grant or denial of an injunction is solely within the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion.Garono v. State (1988), 37 Ohio St.3d 171, 173. A reviewing court should presume that the trial court's findings are accurate since the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the witnesses.In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138. Thus, we accept the trial court's findings of fact unless clearly erroneous.Basicomputer v. Scott (C.A.6, 1992), 973 F.2d 507, 511.
We note at the outset that the trial court erred in finding that Isaacs executed his agreement "in the midst of his employment with Willis[.]" While Ernst did not sign his agreement until two years after he started working for Willis, such was not the case for Isaacs. The record clearly shows that Isaacs signed his 1996 agreement on the day he was rehired by Willis. Thus, the trial court's foregoing finding of fact is clearly erroneous. That being said, we now turn to Willis' first assignment of error.
Willis first argues that pursuant to Arthur Young Co. v.Kelly (Apr. 28, 1998), 1998 WL 41069, Franklin App. No. 87AP-800, unreported, the trial court should have presumed the validity of Isaacs' and Ernst's agreements for preliminary injunction purposes. The trial court, citing Arthur Young Co., held that the determination of the validity and enforceability of a restrictive covenant, if not facially invalid, was inappropriate at the preliminary injunction stage.
In Arthur Young Co., the trial court found a restrictive covenant signed by an employee to be valid and enforceable and granted the employer's motion for preliminary injunction. The Tenth Appellate District held it was "inappropriate for the trial court to make this determination upon considering whether a preliminary injunction should be issued. The restrictive covenant may or may not be valid and enforceable but it is not facially invalid and should be presumed valid for preliminary injunction purposes." Id. at *4.
In the case at bar, the trial court properly ruled it could not determine the validity of the agreements at this stage in the proceedings. The trial court, however, did not go on to presume the validity of the agreements, contrary to the clear holding ofArthur Young Co. The record clearly shows that the trial court's denial of the preliminary injunction motion was based in part on the uncertainty of the law in this and other districts as to whether continued employment alone constitutes consideration for a restrictive covenant signed in the midst of employment. The trial court stated that in light of this unsettled issue, it could not find that Willis was likely to prevail on the merits of its claims. Based on the record and the conflicting case law then before the trial court, we find that the trial court did not have to reach the issue of presumption and thus did not err in failing to presume the validity of Isaacs' and Ernst's agreements. Thus, while Willis' argument that the trial court should have presumed the validity of the agreements is well-taken, we nevertheless find that it does not affect the outcome of this case.
Willis also argues that having been signed at the onset of Isaacs' re-employment with Willis, Isaacs' agreement was supported by sufficient consideration. Willis further argues that although signed in the midst of his employment with Willis, Ernst's agreement was nevertheless supported by sufficient consideration, to wit, continued at-will employment. Appellees, in turn, argue that continued at-will employment alone does not constitute sufficient consideration to support a restrictive covenant and that as a result, Ernst's agreement is unenforceable.
Appellees also argue that Isaacs' agreement is unenforceable because (1) it was never signed by Willis in violation of the statute of frauds as codified in R.C. 1335.05, and (2) Isaacs never consented to the assignment of the agreement to Group MAC after the latter purchased Mike Maynard's interest in Willis.
Although raised by appellees before the trial court, the issues of whether Isaacs' agreement violated R.C. 1335.05 and was properly assigned to Group MAC were never decided by the trial court. As already noted, the trial court erroneously found that the agreement was signed in the midst of Isaacs' employment with Willis. Finding a lack of consensus among appellate courts as to whether continued employment alone constituted sufficient consideration, the trial court found that Willis had failed to establish a likelihood of succeeding on the merits of its claims. We choose, however, to address for the first time the issue of whether continued employment alone constitutes consideration for a restrictive covenant signed during employment.
It is a fundamental principle of contract law that mutual consideration is necessary to support a contract. ChrysalisHealth Care, Inc. v. Brooks (M.C. 1994), 65 Ohio Misc.2d 32. Thus, consideration must be given in order to have a valid restrictive covenant. It is well-established that adequate consideration is present where the restrictive covenant is entered into by the employee at the time the employee accepts employment. See Cohen Co. v. Messina (1985), 24 Ohio App.3d 22. In such a situation, a valid exchange of promises occurs: the employee promises not to compete upon termination of employment and the employer promises to hire the employee. Morgan Lumber Sales Co. v. Toth (C.P. 1974),41 Ohio Misc. 17, 19. Isaacs' agreement was signed the day he was re-hired by Willis and thus was supported by adequate consideration.
The crucial issue at bar, however, is whether continued employment alone constitutes adequate consideration to support a restrictive covenant signed in the midst of employment, such as Ernst's agreement. This is an issue of first impression for this court. A review of the case law shows that Ohio appellate courts are split on this issue and, to date, the Supreme Court of Ohio has not addressed the issue. In fact, when the Fifth Appellate District certified its decision in Copeco, Inc. v. Caley (1992),91 Ohio App.3d 474, to the supreme court as being in conflict with the Ninth Appellate District's decision in Prinz Office Equip. Co.v. Pesko (Jan. 31, 1990), Summit App. No. 14155, unreported, the supreme court dismissed the appeal, stating that the judgments were not in conflict. Copeco, Inc. v. Caley (1994), 69 Ohio St.3d 79.
Several appellate courts have held that continued employment with nothing more, does not constitute consideration. These courts reason that because restrictive covenants are frequently the result of unequal bargaining power, unless they are supported by new consideration beyond the mere promise of continued employment, such as an increase in salary, a promotion, or any additional inducement, such covenants must fail for want of consideration. See Prinz, Summit App. No. 14155, unreported;Apronstrings, Inc. v. Tomaric (Aug. 7, 1987), Lake App. No. 11-272, unreported; Toledo Clutch Brake Service, Inc. v.Childers (Feb. 28, 1986), Lucas App. No. L-85-069, unreported.
In Morgan, 41 Ohio Misc. 17, the Franklin County Common Pleas Court found that the restrictive covenant was solely for the protection of the employer and did not guarantee any period of future employment to the employee. The court held that "[a] contract by an employee not to divulge information obtained in the employment and not to engage in other employment in a similar business for two years after the cessation of his employment is not supported by a sufficient consideration where it was not executed until after he has been in the employment for several years, his position and duties and the nature of the business remain exactly the same as before, and the employer, reserving the right to discharge him at any time, does not assume any obligation which he does not already have." Id. at 19.
In Cohen, 24 Ohio App.3d 22, the Eighth Appellate District, citing Morgan, found that the employee's position, duties, and the nature of the business remained exactly the same as before the restrictive covenant, that the employment relationship was at will, and that the employer assumed no obligation it did not already have. In ruling that continued employment alone did not constitute sufficient consideration, the court relied in part onRhoades v. Rhoades (1974), 40 Ohio App.2d 559, and stated that "[N]either the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party."Cohen at 25.
Other appellate courts have held that, in the case of an at-will employee, continued employment alone is valid consideration to support a restrictive covenant. These courts hold that "the employer's continued employment of the employee after the [latter] signs or agrees to the restrictive covenant is sufficient consideration to support the employer's later enforcement of the agreement, since, as a result of the at-will nature of the employment, neither [the] employer nor [the] employee is obligated to continue the relationship for any period of time. Continued employment, therefore, goes beyond what the employer and employee are already obligated to do and constitutes sufficient consideration." Financial Dimensions, Inc. v. Zifer
(Dec. 10, 1999), 1999 WL 1127292, at *3, Hamilton App. Nos. C-980960 and C-980993, unreported. See, also, Nichols v.Waterfield Financial Corp. (1989), 62 Ohio App.3d 717.
In Copeco, 91 Ohio App.3d 474, the Fifth Appellate District acknowledged the Prinz decision but found its reasoning flawed. The court found the Prinz distinction as to whether a restrictive covenant was entered by the employee at the time the employee accepts employment or in the midst of his employment to be a "distinction without a difference." Id. at 478. The court stated that "[a]s a practical matter every day is a new day for both employer and employee in an at-will relationship. * * * [W]e see no substantive difference between the promise of employment upon initial hire and the promise of continued employment subsequent to `day one.'" Id.
Likewise, the Second Appellate District in Trugreen LP v.Richwine (June 29, 1994), 1994 WL 312937, Clark App. No. 3098, unreported, noted that
 The distinction between an indefinite promise of employment made when an employee is initially hired and an indefinite promise of employment to an existing employee seems artificial to us. It would either permit the employer who finds itself in legitimate need of covenants not to compete from certain of its employees to fire them all and then require them, as a condition of being re-hired, to execute covenants not to compete * * *. We doubt that an employee who would be fired so that he could be replaced with an employee who could properly be required to execute a legitimate covenant not to compete as a condition of his initial hire would appreciate the benevolent paternalism implicit in preventing the employer from simply requiring the existing employee to execute a covenant not to compete as a condition of his continuing employment.
Id. at *3.
Finally, in Canter v. Tucker (1996), 110 Ohio App.3d 421, the Tenth Appellate District went through a thorough analysis of the cases on both sides of the issue. The court found the reasoning set forth in Copeco and Trugreen to be more persuasive than the reasoning set forth in Prinz, Morgan, and Cohen. In particular, the court found the reasoning in Cohen, which itself was based in part on Rhoades, to be flawed and stated that "an employer is not legally bound to continue an at-will employee's term of employment. Thus, * * * we find that continued employment alone constitutes consideration." Id. at 426.
After thoroughly reviewing the case law on both sides of the issue, we find the reasoning in Copeco to be the better approach. We also find persuasive the practical concerns expressed inTrugreen. We thus hold that continued employment alone constitutes sufficient consideration to support a restrictive covenant signed in the midst of employment by an at-will employee. As a result, Ernst's agreement, while signed two years after he was hired by Willis, was supported by sufficient consideration.
We therefore find, in agreement with Willis, that Isaacs' and Ernst's agreements are both supported by sufficient consideration. We, however, decline to discuss whether the agreements were reasonable or created an undue hardship upon Isaacs or Ernst,i.e., whether they are enforceable, as those issues remain for the trial court to determine. Willis' first assignment of error is overruled.
In its second assignment of error, Willis argues the trialcourt erred in failing to grant a preliminary injunction againstIsaacs' and Maynard Heating Cooling's solicitation of Williscustomers and employees. Willis argues it was an abuse of discretion for the trial court to deny its motion for preliminary injunction where the record clearly shows that (1) Isaacs breached his agreement by soliciting Willis customers and employees, and (2) Maynard Heating Cooling tortiously interfered with Isaacs' and Ernst's agreements.
While the trial court found no evidence that Isaacs directly solicited Willis customers, it did find that Isaacs solicited one Willis employee by giving the employee Maynard's phone number, by telling her to call Maynard, and by inviting her to a meeting at Maynard's home to discuss Maynard's new company. The trial court found, however, that in light of the lack of consensus among appellate courts as to whether continued employment alone constituted consideration, Willis had not established a likelihood of succeeding on the merits of this claim.
Willis argues that Isaacs breached his agreement by (1) repeatedly soliciting Willis employees to leave Willis for Maynard Heating Cooling and to "take away Willis customers"; (2) servicing or working on jobs of former Willis customers; and (3) becoming a shareholder and officer of a competing company. Willis charges Isaacs with using this corporate conduit to "indirectly" solicit Willis employees and customers in violation of the agreement. We are loath to accept this particular argument.
We note at the outset that there are no cases directly on point as to whether a restrictive covenant can prevent a former employee from having an ownership interest in a competing company. As a result, we address the issue by applying general principles regarding restrictive covenants.
It is well-established that as a general rule, restrictive covenants not to compete are disfavored by the law. Robert W.Clark, M.D., Inc. v. Mt. Carmel Health (1997), 124 Ohio App.3d 308,314. Such covenants will be enforced if "reasonable." Id.
at 315. Restrictive covenants not to compete are reasonable if the restriction or restraint imposed is (1) no greater than that necessary for the protection of the employer, (2) does not place an undue hardship on the employee, and (3) is not injurious to the public. Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, paragraphs one and two of the syllabus.
In determining whether the restrictions of a covenant are reasonable, each case is to be decided on its own facts. RobertW. Clark, M.D., Inc. at 315. One factor to consider in assessing a covenant's "reasonableness" is whether the restriction seeks to eliminate unfair competition or merely ordinary competition. Id.
See, also, Hilb, Rogal Hamilton Agency of Dayton, Inc. v.Reynolds (1992), 81 Ohio App.3d 330.
We are not persuaded that Isaacs violated his agreement simply because he possessed an ownership interest in a competing company. To adopt the position advocated by Willis would result in a complete alienation of entrepreneurship and would eliminate not just unfair competition, but all competition. This clearly would not be "reasonable" and such an interpretation under the facts herein is unacceptable.
With regard to Isaacs servicing or working on jobs of former customers of Willis, we find this to constitute legitimate ordinary competition. While Willis was the exclusive supplier of HVAC services to several builders until the fall of 1998, Willis did not have an exclusive contract with any builder. Joseph A. Gertz, Willis' president and general manager, admitted that while Willis always tries to preserve its relationships with builders, builders are not bound to keep working with Willis and are free to choose and change the companies they are dealing with. Gertz also testified he was not aware of any builder that went from Willis to Maynard Heating Cooling because Isaacs was now working for Maynard Heating Cooling. There is no evidence that Isaacs caused any builder to leave Willis or that he solicited any Willis customers. We therefore find that the trial court did not abuse its discretion in failing to grant a preliminary injunction against Isaacs' solicitation of Willis customers.
With regard to Isaacs soliciting Willis employees to leave Willis for Maynard Heating Cooling or to "take away Willis customers," we find the record is devoid of any evidence of the latter type of solicitation. As to the first type of solicitation, the record contains conflicting testimony. Three Willis employees testified that they discussed Maynard Heating 
Cooling with Isaacs and/or were given an application by Isaacs to work for Maynard Heating Cooling. One Willis employee also testified that she was invited by Isaacs to go to a meeting at Maynard's house to discuss Maynard's new company. Isaacs denied handing out applications to any Willis employees. Isaacs admitted having conversations with some Willis employees after he had left Willis, but explained the employees would call him at home for his experience about servicing problems at Willis. Isaacs also testified that any Willis employees approaching him about Maynard or his new company were told to contact Maynard directly.
We are mindful that the trial court failed to grant a preliminary injunction against Isaacs' solicitation of Willis employees because of the lack of consensus among appellate courts as to whether continued employment constituted consideration for a restrictive covenant. However, a review of the record and the trial court's decision shows that the trial court was not persuaded by the testimony of the witnesses on behalf of Willis, and thus found that Willis had not established a likelihood of succeeding on the merits of this claim. Based on the record before us, we cannot say the trial court abused its discretion in failing to grant a preliminary injunction against Isaacs' solicitation of Willis employees.
Willis also argues that Maynard and his company tortiously interfered with Isaacs' and Ernst's agreements by (1) making Isaacs a shareholder and employee of Maynard Heating Cooling, (2) soliciting Willis customers for Isaacs' benefit, and (3) having Isaacs and Ernst solicit Willis employees.
"The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B-Abell Elevator Co. v.Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1,14. To recover a claim for intentional interference with a contract, "one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." Kenty v. TransamericaPremium Ins. Co. (1995), 72 Ohio St.3d 415, 419.
It is well-established that "among business competitors the advancement of a bona fide business interest privileges any interference not tainted by unlawful means." In re Gettys
(Bankr.Ct. S.D.Ohio 1997), 205 B.R. 515, 521. "One who intentionally causes a third person * * * not to continue an existing contract terminable at will does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other[,] (b) the actor does not employ wrongful means[,] (c) his action does not create or continue an unlawful restraint of trade[,] and (d) his purpose is at least in part to advance his interest in competing with the other." Id. at 522, quoting 4 Restatement of the Law 2d, Torts (1979) 39, Section 768. As noted by the trial court, "wrongful means" include violence, fraud, civil suits, and criminal prosecution.
In the case at bar, the trial court found that although there was evidence Ernst had breached his agreement, there was no evidence Isaacs had breached his agreement with regard to soliciting Willis customers. The trial court also found there was insufficient evidence that Isaacs, Maynard, or his company had either breached or interfered with Isaacs' or Ernst's agreements. Finding "no evidence of wrongful behavior on [appellees'] part that would convert their actions from proper to improper competition[,]" the trial court concluded that Willis had failed to establish by clear and convincing evidence the likelihood of succeeding on the merits as to any of its claims. After reviewing the record, we find that the trial court's conclusion is supported by the evidence.
With regard to Willis' argument that Maynard and his company interfered with Isaacs' agreement by making him a shareholder and employee of Maynard Heating Cooling, we reiterate our earlier holding that Isaacs did not breach his agreement simply because he possesses an ownership interest in a competing company. Having so held, we find that Maynard and his company cannot have interfered with Isaacs' agreement in that manner.
With regard to Willis' argument that Maynard and his company interfered with Isaacs' agreement by soliciting Willis customers for Isaacs' benefit as a shareholder and officer, our response is twofold. First, while Gertz testified that he was told that two builders, whose names were listed in the Home Builder's Association Directory, were contacted by Maynard, the record is devoid of any evidence that Maynard's solicitation of these builders was for Isaacs' benefit. As previously noted, Willis did not have an exclusive contract with any builder. Gertz admitted that builders were free to choose and change the companies they were dealing with. Gertz also testified he was not aware of any builder that went from Willis to Maynard Heating Cooling because Isaacs was now working for the latter.
Second, Maynard's and his company's interference, if any, with Isaacs' agreement was privileged by the advancement of a bona fide business interest. When Maynard left Willis, he was not bound by a restrictive covenant not to compete. Looking at the factors set forth in In re Gettys, we find that the relation between Willis and Isaacs concerns a matter involved in the business competition between Maynard and his company on one hand and Willis on the other hand. There is no evidence that Maynard and his company employed wrongful means or that their actions led to any unlawful restraint of trade. Finally, it is clear that the purpose of Maynard and his company was at least in part for the advancement of their competitive interests. We therefore find that Maynard and his company did not interfere with Isaacs' agreement in the manner alleged by Willis.
Finally, with regard to Willis' argument that Maynard and his company interfered with Isaacs' and Ernst's agreements by having them solicit Willis employees, we find there is no evidence in the record to support such assertion with regard to Ernst. With regard to Isaacs, as already noted, Isaacs denied handing out applications to any Willis employees or soliciting them. Isaacs testified that any Willis employees approaching him about Maynard and his company were told to contact Maynard directly. Isaacs also testified that Maynard never asked him to solicit Willis employees. Isaacs testified he never heard Maynard ask anybody to solicit Willis employees to work for Maynard. The trial court found there was insufficient evidence that appellees either breached or interfered with Isaacs' and Ernst's agreements. A trial court is best able to view and observe the witnesses and use these observations in weighing their credibility. Based on the record before us, we find that the trial court's finding is supported by the evidence.
In order to obtain a preliminary injunction, a movant must establish by clear and convincing evidence several elements, including a substantial likelihood that the movant will prevail on the merits of his claims. The trial court denied Willis' motion for a preliminary injunction on the ground that it had failed to establish a likelihood of succeeding on the merits of any of its claims. Based on the record before us and in light of all of the foregoing, we find that the trial court did not abuse its discretion in reaching such conclusion and in denying Willis' motion for a preliminary injunction. Willis' second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.