AVERY DENNISON CORP., Plaintiff

v.

Nicholas KITSONAS, Defendant.

No. C2–00–CV–664.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 12, 2000.

William A. Nolan, Squire Sanders & Dempsey, Columbus, OH, for Avery Dennison Corp.

Donald Carl Brey, Chester Willcox & Saxbe, Columbus, OH, John Jonas Chester, III, Chester, Hoffman, Willcox & Saxbe, Columbus, OH, for Nicholas Kitsonas.

## *OPINION AND ORDER*

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Plaintiff's, Avery Dennison Corporation, Motion for a Preliminary Injunction. On June 16, 2000, pursuant to Local Rule 65.1, a hearing was held on the Plaintiff's Motion for a Temporary Restraining Order.

Following the hearing, the Court issued a Temporary Restraining Order against the Defendant, Nicholas Kitsonas. On June 20, 2000, Avery Dennison filed an Amended Complaint. On June 31, 2000, this Court held a preliminary injunction hearing. The Court announced an oral decision on the Plaintiff's Motion for a Preliminary Injunction on July 3, 2000.

### II. FACTS

The Plaintiff, Avery Dennison Corporation, is in the business of manufacturing and selling consumer label and fastener materials. Avery Dennison focuses on self-adhesive base materials, consumer and office products, specialized label systems and fastener products. The Defendant, Nicholas Kitsonas, was employed by Avery Dennison from February 6, 1984 to May 16, 2000. Before he submitted his resignation, Mr. Kitsonas was employed as the Western Regional Sales Manager for the Worldwide Ticketing Services Division of Avery Dennison. His sales territory stretched from Columbus, Ohio to California. Mr. Kitsonas was one of two Regional Sales Managers. During his employment, Mr. Kitsonas was provided proprietary information about Avery's technology, products, strategies, costs, pricing, designs, customers and marketing plans.

On February 6, 1984, when Mr. Kitsonas was first hired by Dennison Manufacturing Company, he signed an employment agreement ("First Agreement").[1] The First Agreement provided that Massachusetts law would govern the Agreement. The First Agreement further provided:

1. Employee will not disclose, directly or indirectly, to any unauthorized person either during or after the termination of employment, any Confidential information, including without limitation, formulae, know-how, processes, shop or trade secrets, customer's names, address, purchases, needs, requirements, technical applications, or the like, learned or ac-

---

1. Avery Corporation and Dennison Company merged in 1989.

quired while Employee is employed, capable of use in any manner in Employer's business or use such information in competition with Employer while employed by Employer;

\*    \*    \*    \*    \*    \*

6.(a) Employee agrees and covenants that for a period of six (6) months following termination of employment, employee will not accept employment or render services, directly or indirectly, with or without compensation, by or for any person, firm, or organization engaged in the sale, servicing, developing, manufacturing, or merchandising of products in competition with any product of the Employer or in any sales, service, or other territory in which the Employee worked during the one (1) year period prior to termination provided that this Paragraph 6(a) shall not preclude Employee from accepting employment or rendering services by or for any person, firm, or organization which deals in products some of which are competitive with some of those of the Employer, provided the accepted employment or service is not directly related to competitive activity during the six (6) months following termination. This provision in no way supersedes or limits the duration of the strictures of Paragraph 1.

On January 16, 1996, following Avery's merger with Dennison, Mr. Kitsonas signed a second Employment Agreement ("Second Agreement") whereby he agreed not to compete for two years and to maintain the customer secrecy clause for one year. The relevant language of the Second Employment Agreement provides:

> For a period of two years following termination of employment with the Company, Employee will not, without first obtaining the express written consent of a Corporate Officer of Avery Dennison Corporation, render services, engage in or enter the employment of or act as an advisor or consultant to any person, firm or corporation engaged in or about to become engaged in the manufacture or sale of any product substantially similar to or competitive with any product on which or with which Employee worked, or about which Employee obtained information, during the last two years of his or her employment with the Company.

And, the relevant language that relates to Customer Secrecy provides:

> Employee will not, without the express written consent of a Corporate Officer of Avery Dennison Corporation, for a period of one year immediately following Employee's termination of employment with the Company for any reason, either directly or indirectly, call upon, solicit, divert or take away, or attempt to solicit, divert or take away any customers, business or patrons of the Company upon whom Employee called or whom Employee serviced or solicited, or with whom Employee became acquainted as a result of employment with the Company.

On May 15, 2000, Mr. Kitsonas informed Avery Dennison that he was resigning effective May 16, 2000. After leaving Avery Dennison, Mr. Kitsonas accepted the position of National Sales Manager for Security Printing and Identity Packaging Corporation ("Security Printing"), based in Columbus, Ohio. Security Printing is involved in the manufacture and sale of consumer label and fastener materials and focuses on hang tags and tickets, while Avery Dennison focuses on self-adhesive base materials, consumer and office products, specialized label systems and fastener products.

On May 16, 2000, while Mr. Kitsonas was moving out of his office, he asked an employee from Signature Control to help him back-up files from the computer owned by and provided to him by Avery Dennison. Mr. Kitsonas's secretary informed Avery Dennison officials that Mr. Kitsonas had been downloading his assigned computer since May 16, 2000, and that he and the Signature Control employee refused to give her the computer be-

cause they had not finished downloading computer files. On May 18, 2000, in a telephone conversation, Mr. Kitsonas stated that he would not return the computer until he was finished downloading files. Mr. Kitsonas had not returned his computer as of May 18, 2000.

## III. LAW

■ The Sixth Circuit has held that the standards for issuing a temporary restraining order or a preliminary injunction are: (1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). The elements are factors to be balanced against each other, but each element need not be satisfied to issue a preliminary injunction. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985); *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1480 (6th Cir.1995). A preliminary injunction is an extraordinary remedy which should only be granted if the movant carries his or her burden of persuasion. *See Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir.1978) (citations omitted).

### A. Likelihood of Success on the Merits

The Court will first determine whether the First or the Second Agreement is valid and binding, and after doing so, will next determine whether Avery Dennison has a likelihood of success on the merits of its claim that Mr. Kitsonas violated the applicable agreement when he accepted a position at Security Printing. To reach these questions, first, this Court will determine whether the Second Agreement is valid. If the Second Agreement is found to be

invalid, the First Agreement will be relied upon by this Court, as it provides that "it shall be binding upon ... the successors and assigns of the Employer."[2]

### B. Second Agreement

■ Dennison merged with Avery in 1989, and Mr. Kitsonas signed the Second Agreement as an employee of Avery Dennison in 1996. The Defendant contends that the Second Agreement, signed in 1996, is void for lack of consideration, in that Mr. Kitsonas was already employed by Avery Dennison when he signed it.

Ohio appellate courts have addressed the issue of "whether continued employment alone constitutes adequate consideration to support a restrictive covenant signed in the midst of employment." *Willis Refrigeration, Air Conditioning & Heating, Inc. v. Maynard,* No. CA99–05–047, 2000 WL 36102, at * 4, 2000 Ohio App. LEXIS 102, at *11 (Ohio Ct.App. Jan. 18, 2000). These courts are split, and the Supreme Court of Ohio has not spoken on the issue. *Id.*

The *Maynard* court summarized the split within the appellate courts:

> Several appellate courts have held that continued employment with nothing more, does not constitute consideration. These courts reason that because restrictive covenants are frequently the result of unequal bargaining power, unless they are supported by new consideration beyond the mere promise of continued employment, such as an increase in salary, a promotion, or any additional inducement, such covenants must fail for want of consideration.

*Id.* at *12 (citing *Prinz Office Equip. v. Pesko,* No. 14155, 1990 WL 7996, 1990 Ohio App. LEXIS 367 (Ohio Ct.App. Jan. 31, 1990); *Apronstrings, Inc. v. Tomaric,* No. 11–272, 1987 WL 15445, 1987 Ohio App. LEXIS 8206, (Ohio Ct.App. Aug. 7,

**2.** The Second Agreement in paragraph 12 states that it "supercedes any existing agreement entered into by Employee and the Company relating generally to the same subject matter and shall be effective as of the date the Employee commenced or commences employment with the company."

1987); *Toledo Clutch & Brake Serv., Inc. v. Childers,* No. L–85–069, 1986 WL 2683, 1986 Ohio App. LEXIS 5763 (Ohio Ct.App. Feb. 28, 1986)). The *Toledo Clutch* court went so far as to imply that under these circumstances no consideration was given:

> The proper inquiry is not whether there was adequate consideration given by appellant in exchange for appellee's promise not to compete, but whether there was any consideration given, beyond mere continued employment.

*Toledo Clutch & Brake Serv.,* 1986 WL 2683, at *3, 1986 Ohio App. LEXIS 5763, at *7–*8. In contrast:

> Other appellate courts have held that, in the case of an at-will employee, continued employment alone is valid consideration to support a restrictive covenant. These courts hold that 'the employer's continued employment of the employee after the [latter] signs or agrees to the restrictive covenant is sufficient consideration to support the employer's later enforcement of the agreement, since, as a result of the at-will nature of the employment, neither [the] employer nor [the] employee is obligated to continue the relationship for any period of time. Continued employment, therefore, goes beyond what the employer and employee are already obligated to do and constitutes sufficient consideration.'

*Willis Refrigeration,* 2000 WL 36102, at *5, 1999 Ohio App. LEXIS 102, at *14 (quoting *Financial Dimensions, Inc. v. Zife,* No. C–980960, 1999 WL 1127292at *3, 1999 Ohio App. LEXIS 5879, at *10 (Ohio Ct.App. Dec.10, 1999)); *see also Nichols v. Waterfield Fin. Corp.,* 62 Ohio App.3d 717, 577 N.E.2d 422 (1989).

The 1996 covenant between Avery Dennison and Kitsonas provides that the contract is "in consideration of his or her employment, promotion, salary or benefit increase, bonus or transfer by the Company (as defined below) and the compensation to be paid by the Company for Employee's services ..." And, under Mr. Kitsonas's signature, the Second Agreement further provides: "NOTE: Agreed to in consideration for 1/96 compensation which was not implemented until this Agreement was signed. J.C. Von Culin." Ms. LaVorgna, the Director of Sales and Marketing at Avery Dennison, testified that employees who refuse to sign the noncompetition agreement are not given pay increases.

This Court subscribes to the view that Kitsonas's continued employment with Avery Dennison constituted adequate consideration. The Court therefore finds that the 1996 Agreement was supported by adequate consideration, and further finds that the 1996 Agreement is binding between Avery Dennison and Defendant Kitsonas. The Court will examine the Second Agreement to determine whether there is a likelihood of success on the merits of this claim.

### 1. Restrictive Covenants in Ohio

■ Ohio law favors reasonable restrictive covenants. The Ohio Supreme Court has held that "a covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 325 N.E.2d 544 (1975) (syllabus) (finding that courts should look to the individual facts of the case). Courts should look to several factors to determine whether the covenant in question is reasonable, including:

> [w]hether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant de-

stroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.

*Raimonde,* 325 N.E.2d at 547. Covenants that are of one year duration have been found to be reasonable and upheld by Ohio courts. *See Rogers v. Runfola & Assoc.,* 57 Ohio St.3d 5, 9, 565 N.E.2d 540, 544 (Ohio 1991).

■ Furthermore, Ohio law allows a court to fashion a reasonable restrictive covenant. Under *Raimonde* "[a] covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." *Raimonde,* 325 N.E.2d at 544 (syllabus ¶ 1). The Court reasoned that "[c]ourts are empowered to modify or amend employment agreements to achieve such results" *Id.* at 548.

■ Avery Dennison argues that it requires restrictive covenants to be signed by its employees to protect its legitimate business interests, which includes trade secrets, and to protect itself from unfair competition. Avery Dennison's reasons for implementing its restrictive covenant are highlighted by Mr. Kitsonas's actions since leaving his employment. Since leaving Avery Dennison, Mr. Kitsonas, as a representative and employee of Security Printing, met with several contacts he gained as an employee of Avery Dennison. For example, Mr. Kitsonas met with Tom Clemmons, the Vice President of Distribution Services for the Limited; Ron Staub, Director of Distribution for Express; John Culler, Purchasing Supervisor for the Limited, and Dave Delaney, the Limited's Operations ˙Manager. In addition, Mr. Kitsonas has contacted John Washburn of Express, Gary Donovan of Structure, Lori Lausness of Target, Inc.; Donna Wence Weber of Lerner, Tom Clellon of Lerner,

and one individual at Lane Bryant. In addition, Mr. Kitsonas, as a Security employee, bid against Avery Dennison to obtain a contract with United Retail Accounts.

Mr. Kitsonas's argument that Security and Avery Dennison are not in competition because Avery Dennison does not manufacture RM–EAS is a red herring. One corporation does not need to manufacture identical products to be in direct competition with another corporation. Although RM–EAS and AM–EAS are different products, they are substitutes for one another—that is, a retailer would use *either* RM–EAS or AM–EAS technology—but not both.

Based on Ohio law, this Court finds that it is likely that Mr. Kitsonas's covenant would be upheld as valid with a modification. First, this Court finds, in accordance with *Raimonde,* that the restrictive covenant was reasonable as: Mr. Kitsonas had extensive contact with customers; he possessed confidential information about customer lists, pricing information, sales strategies and business philosophy;[3] the covenant bars only unfair competition as it seeks to restrict Mr. Kitsonas's employment with companies that produce "substantially similar" or "competitive" products to those of Avery Dennison; next, the covenant does not stifle Mr. Kitsonas's inherent skill and experience as he is able to seek employment as a salesperson, as long as he does not work for a direct competitor of Avery Dennison; the benefit to the employer is not disproportionate to the employee's detriment as both entities are both burdened and benefitted in equal proportion, and finally, the covenant does not destroy the employee's sole means of support as Mr. Kitsonas is permitted to accept any sales job with any company not in direct competition with Avery Dennison.

This Court, however, finds the two year term to be unreasonable, and instead issues the preliminary injunction for one

---

**3.** *See* section III.B.2.

year. The scope is reasonable as it only applies to Mr. Kitsonas becoming employed with a company that produces "substantially similar" or "competitive" products to those of Avery Dennison. Based on this analysis, when applying Ohio law to the 1996 Agreement, Avery Dennison likely would be able to succeed on the merits of its restrictive covenant claim.

### 2. Trade Secrets

Ohio also has a specific statutory provision that addresses the protection afforded trade secrets. Ohio defines a "trade secret" as:

> [a]ny business information or plans, financial information or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic values from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OHIO REV. CODE § 1333.61. An injunction may be issued if there is "actual or threatened" misappropriation of a trade secrets. OHIO REV. CODE § 1333.62. Ohio law further provides that: "[n]o employee of another, who in the course and within the scope of his employment receives any confidential matter or information, shall knowingly, without the consent of his employer, furnish or disclose such matter or information to any person not privileged to acquire it." OHIO REV. CODE § 1333.81 (Breach of Confidence by Employee).

■ Mr. Kitsonas is privy to customer lists, pricing information, sales strategies and the business philosophy of Avery Dennison. Not only was Mr. Kitsonas privy to such information, he trained Avery Dennison employees in the areas of selling and market positioning. This information is a trade secret under Ohio law as it is: "business information or plans, financial information or listing of names, addresses, or telephone numbers...." OHIO REV. CODE § 1333.61. Furthermore, the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic values from its disclosure or use." OHIO REV. CODE § 1333.61. Ms. LaVorgna stated that cost and price files are only provided to employees with limited access, and that the files are password protected. Information on sales volume is also of limited distribution among Avery Dennison employees. Avery Dennison's customer database has limited access. According to Ms. LaVorgna, Mr. Kitsonas would have had access to customer information, but he would not have had access to cost information. Finally, under the requirements of Ohio's trade secret statute, the information in Mr. Kitsonas's possession is the "[s]ubject of efforts that are reasonable under the circumstances to maintain its secrecy." OHIO REV. CODE § 1333.61. These efforts include password protection and limited distribution.

■ Based on the evidence presented at the preliminary injunction hearing, it is likely that Avery Dennison will succeed on the merits of its trade secrets claim. There is evidence that Mr. Kitsonas was in the possession of trade secrets that were either misappropriated or were threatened to be misappropriated through his employment with Security.

### C. Whether The Movant Has Demonstrated Irreparable Injury

■ Avery Dennison has argued that the irreparable injuries that it will suffer from Mr. Kitsonas's breach of his employment agreement include: loss of direct competition; the release of information to Avery's direct competitors; loss of customer business, business advantage and of good will.

As for the trade secret provision of the Employment Agreement, Avery Dennison contends that it will suffer a loss of proprietary and technical information which constitutes trade secrets. Avery Dennison contends that issuing the preliminary injunction will help to maintain commercial ethics, encourage invention and protect Avery Dennison's investments in its customer relations, customers, sales strategies and proprietary information.

The Court agrees with Avery Dennison and finds that that failure to enforce the restrictive covenant against Mr. Kitsonas would present irreparable injury to the Plaintiff.

## D. Whether the Issuance of a Preliminary Injunction would Cause Substantial Harm to Others

■ Avery Dennison contends that only Mr. Kitsonas and Avery would be affected by the ruling, as Security has no need for the information and will not suffer if it is forced to wait for Mr. Kitsonas's services. Furthermore, Mr. Kitsonas will receive two-thirds of his salary if he is unable to find suitable employment within three months of his separation from Avery Dennison.

The Court does not hinge its decision upon Avery Dennison's promise to pay two-thirds of Mr. Kitsonas's salary. First, Avery Dennison's obligation is only triggered if Mr. Kitsonas is not able to find suitable employment in three months. Second, it is only two-thirds of Mr. Kitsonas's base salary of $90,000. If the injunction were to issue for one year, for example, Mr. Kitsonas would, at most, receive $60,000, while his total salary for last year, including commissions, was $130,000. Despite this result, the Court finds that the issuance of a preliminary injunction would not cause substantial harm to others. Security Printing would not be harmed, as it has no right to the information in Mr. Kitsonas's possession. Any harm to Mr. Kitsonas would be as a direct result of his own actions. Mr. Kitsonas was aware of the restrictive covenants, yet he chose to accept employment with Security Printing and to take the risk that the covenant with Avery Dennison would not be enforced. Mr. Kitsonas, a sophisticated businessman, made an economic decision to accept a job with greater salary, and understood that the result herein could be a possible consequence of his decision.

## E. Whether The Public Interest is Served by the Issuance of an Injunction.

■ Avery Dennison argues that a preliminary injunction would preserve business competition and would preserve ethical and orderly conduct of the business. Furthermore, the preliminary injunction would discourage the practice of seeking unfair business advantages. The injunction would also stop competitors from interfering with customer relations and/or raiding key employees of competitors who are in possession of confidential, sensitive business information.

The Court agrees with Avery Dennison and finds that the public interest would be served by the issuance of an injunction. This Court finds that valid contracts are the lynchpin of all commercial activity in society, and therefore, they must be honored. Further, the public interest is served by discouraging practices aimed at surreptitiously acquiring trade secrets, by prohibiting misappropriation of trade secrets, and by condemning the theft of clients through unfair competition.

## IV. CONCLUSION

Having found that all four factors have been met for the issuance of a preliminary injunction, this Court hereby issues a preliminary injunction that implements the 1996 Agreement between Avery Dennison and Mr. Kitsonas. The only modification the Court makes to the Agreement is that it will be in effect for one year, instead of two, beginning on the date of Mr. Kistonas's resignation from Avery Dennison. The Court therefore **GRANTS** Avery Den-

nison's Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**