RAIMONDE, APPELLANT, *v.* VAN VLERAH, APPELLEE.

[Cite as Raimonde v. Van Vlerah
(1975), 42 Ohio St. 2d 21.]

(No. 74-366—Decided April 2, 1975.)

Messrs. *Weaner, Hutchinson, Zimmerman & Bacon,* Mr. *Karl H. Weaner* and Mr. *Roger V. Bacon,* for appellant.

Messrs. *Hoeffel, Funkhouser & Short,* Mr. *John H. Hanna* and Mr. *Thomas J. Short,* for appellee.

PAUL W. BROWN, J. Appellant seeks to enjoin the appellee from practicing veterinary medicine in violation of a contract between the parties. The Court of Appeals, relying upon *Extine* v. *Williamson Midwest* (1964), 176 Ohio St. 403, refused to enforce the contract and denied relief. We reverse.

I

In *Briggs* v. *Butler* (1942), 140 Ohio St. 499, and in *Extine,* this court applied the so-called "blue pencil" test to construe two employment contracts. The "blue pencil" test provides that if unreasonable provisions exist in such a contract, they may be stricken, if divisible, but not amended or modified. It also provides that if restrictions are unreasonable and indivisible, the entire contract fails.

In *Briggs,* an employee signed a contract with The Welcome Wagon Service Company, promising not to engage in similar employment for five years following termination, either in Toledo, Ohio, or anywhere else in the United States or Canada where the employer did business. The Court of Common Pleas applied the "blue pencil" test, and struck all territorial restrictions beyond Toledo. This court affirmed.

In *Extine,* an employee signed a contract providing that, for two years following termination of employment, he would not engage in the same line of business as his employer, on his own or in concert with other former employees, nor attempt to direct business from his employer, especially customers with whom he had dealt. This court, finding the prohibition on engaging in the same line of business to contain no limitation as to space, applied

the "blue pencil" test, and severed the offending portion from the contract.

We applied the "blue pencil" test in *Extine*, however, with reluctance. We recognized that a growing minority of courts had abandoned the rule, and were holding all employment contracts valid if modification made them reasonable. We now recognize that application of the "blue pencil" test has produced both arbitrary and inconsistent results, and believe it is time to reexamine the doctrine.

Originally, all agreements in restraint of trade without consideration therefor were held presumptively void. *Mitchel* v. *Reynolds* (1711), 1 P. Wms. 181, 24 Eng. Rep. 347. Working men entered skilled trades only by serving apprenticeships. Mobility was minimal. Restrictive covenants either destroyed a man's means of livelihood, or bound him to his master for life. Later, as the character of the work-a-day world became more flexible, courts sought a means to lift the blanket prohibition on employment restrictions. One result was the "blue pencil" test, which promised simplicity and clarity, and allowed courts to claim they were not actually "rewriting" private contracts.

In practice, however, the test has not worked well. Because it precludes modification or amendment of contracts, the entire contract fails if offending provisions cannot be stricken. Because divisible provisions sometimes contain integral parts of the agreement, "blue penciling" those provisions may render the contract useless. Because employers seek to ensure that provisions are not unreasonable, and therefore severed, employees may gain the benefit of overly-lenient employment restrictions.

Thus, many courts[1] have abandoned the "blue pencil"

---

[1]Among the recent decisions discarding the "blue pencil" test are *Ehlers* v. *Iowa Warehouse Co.* (Iowa, 1971), 188 N. W. 2d 368; *Karpinski* v. *Ingrasci* (1971), 28 N. Y. 2d 45, 268 N. E. 2d 751; *Solari Industries* v. *Malady* (1970), 55 N. J. 571, 264 A. 2d 53; and *American Eutectic Welding Alloys Sales Co.* v. *Rodriguez* (C. A. 1, 1973), 480 F. 2d 223. The opinions in those cases collect numerous other decisions so holding. See, also, 14 Williston on Contracts (3 Ed.), 293, Section 1647C, and 6A Corbin on Contracts, Sections 1390 and 1394, both of which urge the adoption of a rule of reasonableness.

test in favor of a rule of "reasonableness," which permits courts to determine, on the basis of all available evidence, what restrictions would be reasonable between the parties. Essentially, this test differs from the "blue pencil" test only in the manner of modification allowed. It permits courts to fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all the factors comprising "reasonableness" in the context of employee covenants.

Among the factors properly to be considered are: "[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment." *Extine, supra,* at 406. See *Arthur Murray Dance Studios of Cleveland* v. *Witter* (1952), 62 Ohio Law Abs. 17.

Appellee argues that adoption of a rule of reasonableness would allow employers to dictate restraints without fear, knowing that judges will rewrite contracts if they are taken to court. Such a contention is without merit. Most employers who enter contracts do so in good faith, and seek only to protect legitimate interests. In fact, relatively few employment contracts reach the courts.

"In determining the validity of a convenant or agreement in restraint of trade, each case must be decided on its own facts * * *." *Extine, supra,* at 403. We hold that a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the

26

extent necessary to protect the employer's legitimate interests. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such results.

II

Appellant's complaint sought relief "for a period of three years from his [appellee's] termination of his employment under the employment contract." The trial court enjoined appellee for three years from the date of the court's entry. The Court of Appeals reversed.

Civ. R. 54(C) provides, in part:

"* * * Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled;* however, a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial. * * *"

Appellee urges that "a demand for a specific length of time is the same as a demand for a specific amount of money," and thereby seeks to limit appellant's relief to that sought in the complaint.

Under the Ohio Civil Rules, procedural matters are vastly changed from the days of code pleading. Cases are now "tried on the proofs rather than the pleadings." *De Loach* v. *Crowley's* (C. A. 5, 1942), 128 F. 2d 378. Under Civ. R. 54(C), the facts determine the relief to be granted in a particular case, except where a money judgment or default judgment is involved. The new rule makes it unnecessary to add the phrase, "and such further relief as plaintiff may be entitled to in law and equity" to gain such additional relief. McCormac, Ohio Civil Rules Practice 99, Section 5:06. Rather, Civ. R. 15 allows amendments to

pleadings when justice requires or when necessary to conform to the evidence. *Jones & Laughlin Steel* v. *Bd. of Revision* (1974), 40 Ohio St. 2d 61.

Experience under F.R.C.P. 54(c) has been similar. Wright, in his treatise, Law of Federal Courts (2 Ed.), 437, Section 98, states:

"* * * [T]he judgment is not limited in kind or amount by the demand for relief, but may include whatever relief the successful party is entitled to, regardless of the demand. This is in accord with the general theory of Rule 15(b), that in a contested case the judgment is to be based on what has been proved rather than what has been pleaded.* * *

"Thus the rule provides that the demand for judgment loses much of its restrictive force if the case is at issue. Particular legal theories of counsel then are subordinated to the court's right and duty to grant the relief to which the prevailing party is entitled whether demanded or not. The party may be awarded damages in excess of those he has demanded in his pleading, or may be awarded a different kind of relief than he requested.* * *"

For similar analyses, see 6 Moore's Federal Practice (2 Ed.), paragraphs 54.60-54.62; 10 Wright and Miller, Federal Practice and Procedure; Civil, Sections 2662-2664; and the hundreds of cases cited therein.

Ohio Civ. R. 54(C) differs from F.R.C.P. 54(c) in one important respect. In Ohio, judgments of money may not exceed the dollar amount claimed in the complaint. F.R.C.P. 54(c) provides that a party may recover a money judgment of any amount, regardless of what is claimed in the pleadings. Thus, under F.R.C.P. 54(c), a party is not limited to the relief claimed in the complaint except when judgment by default is awarded. In Ohio, a party is not limited to the relief claimed in the complaint, except when judgment by default is entered or when a judgment for money is sought and awarded. See 5 Milligan, Ohio Forms of Pleading and Practice, Form 54:21.

In the present case, appellant sought injunctive relief

for three years from the date of termination, and for a 30-mile radius of Defiance, in accordance with the terms of the contract. The trial court, in its discretion, enjoined appellee as to an 18-mile radius, for three years from the date of the court's order. Such a result was entirely proper. To hold otherwise would emasculate the clear intent of the Ohio Civil Rules, in this instance Civ. R. 54 (C). That rule was designed to break free from the strictures of code pleading, and to allow the relief to which the prevailing party is entitled, regardless of what may have been requested in the complaint.

In framing its judgment entry, the Court of Common Pleas restricted enforcement of the covenant to a radius of 18 miles, and enjoined appellee for three years from the date of said entry. The record, however, does not indicate how such determination was made. Because this court holds, for the first time, that a trial court may enforce a covenant "to the extent necessary to protect an employer's legitimate interests," we direct that this cause be remanded to the Court of Common Pleas, so that court may ascertain if its initial finding conforms with the test established today.[2] That court is now specifically empowered to construct a reasonable covenant between the parties, and to grant injunctive relief, if appropriate, for the period of time to which appellant may be entitled.

The judgment of the Court of Appeals is reversed, with instructions to remand the cause to the Court of Common Pleas.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

[2]We intimate no view as to the reasonableness of the trial court's initial determination.