**Professional Investigations, Inc. v. Kingsland**
*[Cite as 7 AOA 437]*

*Case No. 90AP-108*
*Franklin County, (10th)*
*Decided October 11, 1990*

*James R. Leickly and Robert J. Mann, Luper, Wolinetz, Sheriff & Neidenthal, for Appellee.*

*James E. Melle and Robert M. Greggo, Lucas, Prendergast, Albright, Gibson & Newman, for Appellants.*

McCORMAC, J.

Defendants-appellants, cross-appellees, Bruce Kingsland and Steve Owens, dba Owens Enterprises ("Kingsland"), appeal from the judgment of the Franklin County Court of Common Pleas, dismissing three counts of their amended cross-claim for failure to state a claim for relief and raise the following assignment of error:

"I. THE TRIAL COURT ERRED IN DISMISS-ING THE COUNTERCLAIMS FOR FAILURE TO STATE A CAUSE OF ACTION."

Plaintiff-appellee, cross-appellant, Professional Investigations and Consulting Agency, Inc. ("PICA"), has filed a cross-appeal from the trial court's grant of partial summary judgment in Kingsland's favor and raises the following assignments of error:

"I. THE TRIAL COURT ERRED IN HOLD-ING THAT THE ENFORCEABILITY OF THE NON-COMPETITION CLAUSE WAS BARRED BY THE STATUTE OF FRAUDS.

"II. THE TRIAL COURT ERRED IN RULING THAT THE DOCTRINE OF PROMISSORY ESTOPPEL DID NOT PRECLUDE KINGSLAND AND OWENS FROM ASSERT-ING THE DEFENSE OF STATUTE OF FRAUDS.

"III. THE TRIAL COURT ERRED IN FIND-ING THAT PICA'S NON-COMPETITION RE-STRICTION WAS TOO INDEFINITE TO BE ENFORCED."

PICA is a private investigation business providing services primarily to insurance companies and law firms. Kingsland was first hired by PICA as an independent contractor in July 1984. On September 1, 1984, Kingsland became a part-time employee of PICA and, on October 20, 1986, he became a full-time employee of the company. On each occasion, Kingsland signed either an independent contractor or employment agreement, all of which contained the following clause:

"From the date hereof through the term of Employee's employment hereunder and for a period of two (2) years after any termination hereof (whether under this Agreement or for any other cause or reason), Employee agrees that he will not directly or indirectly, acting alone or with others, call upon, solicit, sell to or otherwise deal with past or present customers of the Corporation, divulge names of past or present customers of the Corporation, or use customer lists in any manner. As used herein, past or present customers' shall be determined as of the date of termination of Employee's employment."

On November 11, 1986, Kingsland left the employment of PICA. In his letter of resignation, Kingsland indicated that he would "*** adhere to PICA Corporation's policies as set forth in [his] contract." Subsequently, in April 1987, Kingsland was rehired as a full-time employee. At the time of his rehire, the parties orally agreed that Kingsland would abide by the terms of the October 20, 1986 agreement. It appears from his deposition testimony that Kingsland was never fully, aware of the exact meaning of the non-competition clause nor was the provision ever explained to him. On August 5, 1987, Kingsland again resigned. Thereafter, Kingsland began to work as a private investigator for Steve Owens, who was doing business as Owens Enterprises.

Kingsland admitted that, during the course of his employment with Owens, he solicited business from parties that had at one time used PICA for their investigative needs. A few of these solicitations resulted in the procurement of work for Owens Enterprises. Kingsland denies that he regarded the parties he solicited as clients of PICA.

On August 18, 1988, PICA filed a verified complaint requesting a temporary restraining order against Kingsland and Owens based upon the non-competition clause of Kingsland's employment agreement. That same day the trial court granted PICA's request for a temporary restraining order and set bond at $50. Both

defendants were notified of PICA's intentions but chose not to challenge the initial order. On August 31, 1988, by agreement of the parties, the TRO was extended until September 27, 1988. On September 27, the parties again agreed to extend the TRO until October 7, 1988, thereby converting the TRO into a preliminary injunction. The entry granting this final extension purportedly contained a list of clients whom Kingsland and Owens could not solicit, but the list, identified as Exhibit A in the entry, is not contained in the record on appeal.

On November 3, 1988, PICA filed a motion to dismiss counterclaims raised by Kingsland addressed to the issue of wrongful issuance of the TRO. Shortly thereafter, Kingsland filed a motion for partial summary judgment contending that the April 27 oral agreement was barred by the statute of frauds and that the restrictive covenant was unenforceable. By entry dated January 8, 1989, the trial court sustained PICA's motion to dismiss and granted Kingsland's motion for summary judgment.

Prior to addressing the parties' assignments of error, we are first presented with PICA's motion to dismiss for lack of jurisdiction. At oral agreement, an issue arose as to whether counterclaims remaining before the trial court precluded the entry of a final appeal able order. Subsequently, Kingsland dismissed all remaining counterclaims thereby rendering PICA's motion to dismiss moot. Therefore, PICA's motion to dismiss is overruled.

Kingsland's assignment of error is predicated upon an affirmance by this court of the trial court's judgment. Therefore, we will address appellee-cross-appellant PICA's assignments of error first.

By its first assignment of error, PICA contends that the trial court erred by concluding that the April 1987 oral agreement was barred by the statute of frauds. PICA argues that, since the oral agreement is logically related to the written contract, the oral agreement is merely an extension of the written contract and, therefore, the statute of frauds is inapplicable.

R.C. 1335.05, Ohio's codification of the statute of frauds, provides that no action shall be brought upon certain enumerated matters unless the agreement, or some memorandum or note thereof, is in writing signed by the party to be charged. Those matters include a promise to answer for the debt of another, an agreement made upon consideration of marriage, a contract for the sale of lands and an agreement which

cannot be performed within one year. Generally, an employment-at-will contract can be performed within one year and therefore, does not fall within the statute. However, the oral agreement between PICA and Kingsland was more than an employment contract; it also contained a two-year non-competition clause. The non-competition clause did not arise until termination and then continued with no provision for extinguishment of its terms for two years. Therefore, the non-competition clause could not be performed within a year and does fall within the statute of frauds.

PICA cites the case of *Negley v. Jeffers* (1875), 28 Ohio St. 90, for the proposition that an oral extension of a written contract does not come within the statute. We do not give *Negley* the same interpretation as does PICA. *Negley* involved a written contract for the sale of land. Included within the sale was a lease of certain parts of the land to be sold. As part of the original contract, this lease was to be extinguished since it amounted to an encumbrance on the land. By a subsequent oral agreement, the defendant agreed to waive his right to insist upon extinguishment of the lease prior to payment. Since the land had already been sold by the written contract and titled conveyed, the Supreme Court held that this was not a contract for the sale of land and, hence, was outside the statute of frauds. *Negley* does not stand for the proposition PICA relies on and therefore, the statute of frauds does apply to the oral agreement."

PICA next argues that, even if the oral agreement is barred by the statute of frauds, there exists a written agreement which would continue to apply. On October 20, 1986, the parties executed a written agreement which contained a two-year non-competition clause. The clause became effective on November 11, 1986, when Kingsland terminated his employment. In his letter of resignation, Kingsland agreed to abide by the non-competition agreement. Even though there is a question as to whether he understood it, Kingsland read and signed the contract and is charged with knowledge of its contents.

The trial court did not address this argument in its decision or entry. Kingsland argues that the subsequent period of employment terminated the written contract and that it ceased to exist. That argument is well-taken. The employment conditions were then governed by the new agreement and not the old agree-

ment. Obviously, Kingsland was then free to contact clients since he had returned to work for PICA. The new agreement erased any obligations remaining under the prior non-competition clause. The enforceability of a non-competition clause must be based solely-on the new agreement.

PICA's first assignment of error is overruled.

PICA's third assignment of error is that the trial court erred in finding that PICA's non-competition restriction was too indefinite to be enforced. The trial court cited unenforceability of the restrictive covenant as an alternative reason for its decision. Kingsland claims that the clause was indefinite because the clients that he was prohibited from contacting were not named at the time the contract was executed.

At the time the parties executed the contract, it would have been impossible to determine who would be included as past or present customers. PICA might acquire new clients during Kingsland's employment tenure that would necessarily fall within the non-competition clause. To hold that only past or present clients that could be named on the date the contract was formed were covered by the agreement would render the clause almost meaningless because it would not apply to customers acquired during Kingsland's period of employment. In fact, many valid non-competition clauses are limited strictly to those clients serviced by the employee during his tenure with the employer. Therefore, the failure to specify what clients were covered by the agreement at the time of execution of the contract does not render the non-competition clause invalid.

For a covenant not to compete to be enforceable, its restrictions must be no greater than that which is required to protect the employer, it must not impose an undue hardship on the employee, and it cannot be injurious to the public. *Raimonde v. Van Vlerah* (1975), 42 Ohio St. 2d 21. It was not until the TRO was automatically converted to a preliminary injunction, after the second continuance, that any client list was provided. (We are assuming this was done since the parties both state so in their briefs even though the exhibit, which was purportedly attached to the trial court's entry, does not appear in the record.) Therefore, it was not until after Kingsland resigned, and after he allegedly violated the covenant, that he was made aware of the extent of the non-competition clause.

The agreement places no temporal or geographic limitations on the covenant. It purports to restrict solicitation of any past clients of PICA's regardless of whether PICA had a business relationship with the client at or near the time of Kingsland's discharge. If PICA did work for a customer on one occasion ten years ago and never worked for that customer again, Kingsland would be barred from dealing with that past client. This lack of temporal limitation gives the covenant a greater restraint than necessary to protect PICA and imposes an undue hardship on Kingsland.

Furthermore, the non-competition clause has no geographic restrictions, making it unduly restrictive. If PICA does work for only the Columbus office of a company with offices in Columbus and New York, Kingsland would be barred from moving to New York and doing work for the company there even though that office is not a client of PICA and exercises independent judgment.

PICA correctly points out that a trial court has the authority to refashion an unduly restrictive non-competition clause to make it reasonable and thus enforceable. The court in *Raimonde* held "*** that a trial court may enforce a covenant 'to the extent necessary to protect an employer's legitimate interests' ***." *Supra*, at 28. In *Raimonde*, the employer sought to enforce a covenant containing a thirty-mile restriction which the trial court limited to eighteen miles. The Supreme Court determined that this modification was within the trial court's discretion but remanded the action for a determination of reasonableness in light of the Supreme Court's new formulation of the law.

The non-competition clause drafted by PICA contains no easily modifiable temporal or geographic restrictions. To bring PICA's non-competition clause into compliance with the rule of reasonableness, the trial court could not easily modify existing provisions but might be required to rewrite the entire covenant. The use of permissive language in the *Raimonde* decision implies that modification is within the discretion of the trial court. We have found no case which states that a trial court must totally rewrite a provision in order to carry out its discretionary powers. The trial court did not abuse its discretion in declining to modify the restrictions even if the non-competition clause were enforceable.

PICA's third assignment of error is overruled.

PICA secondly contends that the trial court should have applied the doctrine of promissory estoppel to defeat Kingsland's statute of frauds defense to the April 1987 oral agreement. Since we have determined that, even if the oral agreement was enforceable, the clause sought to be used is unenforceable, PICA's argument lacks merit.

PICA's second assignment of error is overruled.

Kingsland's sole assignment of error is that the trial court erred by dismissing, for failure to state a claim, his counterclaims for damages. Kingsland contends that, since the trial court dissolved the preliminary injunction, he is automatically entitled to damages for the wrongful issuance of the original TRO.

Civ. R. 65(C) governs security in injunction, proceedings and provides in part:

"(C) Security. No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety, approved by the clerk of the court granting the order or injunction, in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted."

The staff notes to Civ. R. 65 state that the rule is an adaptation of Fed. R. 65 and represents a change in Ohio law, in that an independent action against the surety is unnecessary since a surety may now be subject to liability in the same action.

Kingsland cites *Benrus Watch Co. v. Weinstein Wholesale Jewelers* (1959), 108 Ohio App. 525, to support its contention that the final dissolution of a TRO or a preliminary injunction conclusively establishes that the TRO was wrongfully issued. *Benrus* did hold this to be true, but only in an independent action against the surety. The *Benrus* court would not permit a surety to relitigate the issue of wrongful issuance in the independent action. However, *Benrus* did not hold that this principal applied in a case of a counterclaim against the plaintiffs in the same action. Instead, the *Benrus* court held that the court in the case in which the temporary injunction was issued has jurisdiction upon its dissolution, in its discretion, to determine whether or not the injunction was properly granted. The court obviously rejected an automatic finding as it stated that the decision cannot be made without evidence.

In the present case, as is typical with many TRO proceedings, the TRO was granted ex parte without argument from the party restrained. PICA submitted a verified complaint as well as an affidavit outlining the attempts made to notify Kingsland. In granting the TRO, the trial court did not have the benefit of Kingsland's arguments. Once the trial court was presented with both parties' arguments, it determined that the injunction was wrongfully issued. This does not automatically vest Kingsland with a right to damages.

In essence, the court must conduct two separate inquiries. Initially, the court must determine, after taking evidence from both parties, whether the temporary injunctive relief should be dissolved or made permanent. If it is dissolved, the court must then determine if the TRO was wrongfully issued in the first instance. As the court in *Daniel Construction Co. v. International Brotherhood of Electrical Workers* (Dec. 10, 1986), Ross App. Nos. 1237 and 1243, unreported, stated:

"More evidence is needed to support a permanent injunction than is needed to support a temporary restraining order or preliminary injunction. We believe a finding that the evidence is insufficient to support a permanent injunction does not necessarily mean the evidence was insufficient to support a temporary restraining order or preliminary injunction."

In the trial court's May 24 decision on the counterclaims of Kingsland, it stated "[i]t was not until after a great deal of evidence was presented that the Court issued a Decision on March 14, 1989, holding the covenant to be unenforceable. *** Under these circumstances, the Court rules as a matter of law that the counterclaims resulting from the issuance of the Restraining Order do not state a cause of action. ***" By the terms of the May 24 decision, the trial court looked beyond the pleadings, which is prohibited when determining a Civ. R. 12(B)(6) motion. See *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St. 2d 242. Therefore, this action must be remanded to the trial court for a determination on the merits of Kingsland's right to damages for wrongful issuance of the temporary restraining order if the court finds that the temporary restraining order was, in fact, wrongfully issued.

Upon remand, Kingsland's damages, contrary to his contentions, are to be limited to the amount of the bond. See *Buddy Systems, Inc. v. Exer-Genie, Inc.* (1976), 545 F.2d 1164. Not only

does the analogous Federal Rule after which Civ. R. 65 was modeled mandate this result, but the language of Civ. R. 65(C) leads us to the conclusion that, regardless of how the action is filed, an enjoined parties' damages are limited to the amount of the bond. Civ. R. 65(C) provides that the enjoined party may move the court for additional security if inadequate. The party seeking the injunction is entitled to know the limits of his liability prior to posting a bond to make the TRO or preliminary injunction effective.

Appellants' assignment of error is sustained to the extent stated above.

Appellants' assignment of error is sustained. Appellee-cross-appellant's assignments of error are overruled. The judgment of the trial court is affirmed in part and reversed in part and the case is remanded for further procedure consistent with this opinion.

*Judgment affirmed in part,
reversed in part, and
case remanded.*

BOWMAN and BRYANT, J.J., concur.

BRYANT, J., of the Third Appellate District, sitting by assignment in the Tenth Appellate District.