621 S.E.2d 352

**STONHARD, INC., Plaintiff,**

v.

**CAROLINA FLOORING SPECIALISTS, INC., Daniel Parham, and Manuel T. Parham, Defendants.**

No. 26047.

Supreme Court of South Carolina.

Heard June 15, 2005.
Decided Oct. 10, 2005.
Rehearing Denied Nov. 17, 2005.

Bradford Neal Martin, Laura W.H. Teer, and William S.F. Freeman, all of Walker Martin & Reibold, of Greenville, for Plaintiff.

W. Andrew Arnold and Brian E. Arnold, both of Arnold & Arnold, of Greenville, for Defendants.

Chief Justice TOAL:

Pursuant to Rule 228, SCACR, we accepted the following questions on certification from the United States District Court for the District of South Carolina:

I.    May a non-compete agreement that contains a New Jersey choice-of-law provision but no geographical limitation be reformed (or "blue penciled") in accordance with New Jersey law and then enforced in South Carolina?

II.   May a non-compete agreement that is reformed (or "blue penciled") under New Jersey law apply to support an award of damages for breaches occurring prior to the time the agreement is reformed?

III.  Does South Carolina law allow a court to grant equitable relief extending the term of a non-compete agreement beyond its stated expiration date?

We answer all three questions in the negative.

### FACTUAL/PROCEDURAL BACKGROUND

Stonhard, Inc. (Stonhard) sued Carolina Flooring Specialists, Inc., Daniel Parham, and Manuel Parham (Defendants) alleging, among other things, that Defendants violated the terms of a non-compete agreement.[1] Stonhard is a flooring company that uses a bidding process to gain customers. Stonhard alleges that Defendants established a competing flooring business (Carolina Flooring) while still employed at

---

1. The enforcement of the non-compete agreement forms the subject of the questions before this Court.

Stonhard, and used their knowledge of Stonhard's pricing policy to marginally underbid Stonhard on several occasions. After Stonhard became aware of this conduct, Defendants were fired. Since then, Defendants have continued to operate Carolina Flooring.

While employed at Stonhard, Defendants signed a non-compete agreement which provides:

> During my employment with Stonhard, and for a period of one (1) year subsequent to termination of employment with Stonhard, regardless of the reason for such termination, I shall not compete with Stonhard by engaging in any activity similar to the activities I undertake during the course of my employment with Stonhard.

The agreement also contained a choice-of-law provision stating that New Jersey law applied.

### LAW/ANALYSIS

### I. Reformation of Non–Compete Agreement

The first question is whether a non-compete agreement which does not contain a geographical limitation may be reformed or "blue penciled" according to New Jersey law and then enforced in South Carolina. The answer to this question is no.

Terms in a non-compete agreement may be construed according to the law of another state. *Standard Register Co. v. Kerrigan,* 238 S.C. 54, 70–71, 119 S.E.2d 533, 541–42 (1961). But if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement. *Id.*

Under New Jersey law, a court may modify or "blue pencil" a non-compete agreement so as to make its terms reasonable. *Karlin v. Weinberg,* 77 N.J. 408, 390 A.2d 1161, 1168 (1978). For example, when a geographical limitation in a non-compete agreement is overly broad, a court may decrease the limitation to make it reasonable, while at the same time continuing to enforce other terms in the agreement. *Id.; see also The Community Hosp. Group, Inc. v. More,* 183 N.J. 36, 869 A.2d 884, 900 (2005) (holding that the lower court should have decreased the geographical limitation in the non-compete

agreement, and courts should not hesitate to partially enforce an agreement when it is reasonable to do so); *Solari Indus., Inc. v. Malady,* 55 N.J. 571, 264 A.2d 53, 61 (1970) (adopting a rule permitting "the total or partial enforcement of noncompetitive agreements to the extent reasonable under the circumstances").

In the present case, the non-compete agreement does not contain a geographical limitation, and we have been unable to find a single case from New Jersey in which a court has added a geographical term when one was previously omitted. We hold, therefore, that the contract may not be reformed or blue-penciled so as to add an entirely new term to which neither of the parties agreed.

Because we find no term that may suffice as a substitute for a geographical restriction so as to render the covenant reasonable, we hold that the covenant is unenforceable as against public policy. *See Poole v. Incentives Unlimited, Inc.,* 345 S.C. 378, 548 S.E.2d 207 (2001) (holding that a covenant not to compete is enforceable if it is not detrimental to the public interest, is reasonably limited as to time and territory, and is supported by valuable consideration). The agreement fails to limit the covenant to a particular geographical area. To add and enforce such a term requires this Court to bind these parties to a term that does not reflect the parties' original intention. Therefore, we hold that the covenant, despite any reformation, is void and unenforceable as a matter of public policy.

## II. Damages

The second certified question is: (1) whether New Jersey law would allow damages to be assessed from the time the alleged breach of the covenant commenced, rather than from the time the covenant is reformed, if reformed; and (2) whether such an award is against South Carolina public policy.

We have no case in South Carolina or from the Fourth Circuit that has granted any relief other than injunctive relief for breach of a covenant not to compete. We are also unwilling to hold a party liable for breach of contract when the contract was void at the time of the alleged breach. The Second Circuit has ruled that an assessment of damages

should relate back to the date the employment relationship was breached, in the same manner as a preliminary injunction. *A.N. Deringer, Inc. v. Strough*, 103 F.3d 243 (2d Cir.1996).

Because we have held that the covenant is unenforceable, the answer to this certified question is no.

### III. Extending the Expiration Date

█ Stonhard argues that equity and South Carolina public policy allows the district court to extend the expiration date of the covenant beyond the one-year time period after the Defendants' termination of employment, which is provided in the contract. We disagree.

Even if equity and public policy allowed this Court to extend the time period of the covenant, the parties' original agreement fails to provide any guidance as to exactly how long the covenant's expiration date could be extended. The covenant provides that, should Defendants' employment be terminated, Defendants will not compete with Stonhard for one year after the date of termination.

Accordingly, any extension of the time period would be against public policy, because it would be arbitrary and set precedent allowing a court to disrupt a party's private right to contract.

### CONCLUSION

We hold that the non-compete agreement may not be reformed in accordance with New Jersey law and then enforced in South Carolina. The absence of a geographical limitation makes the agreement void as a matter of law. New Jersey's "blue penciling" law, though appearing to provide a court with the discretion to rewrite unreasonable provisions, does not allow a provision to be written into a covenant when such a provision never previously existed. Even if the agreement could be reformed in this manner under New Jersey law, the agreement would be unenforceable in South Carolina because the very act of adding a term not negotiated and agreed upon by the parties violates public policy.

Therefore, the answer to each certified question is no.

MOORE, WALLER and BURNETT, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I agree that New Jersey would not permit this non-compete clause to be "blue-penciled" to include a geographical limitation, and that therefore the answer to the first certified question is "No." Accordingly, I join only Part I of the majority's decision as I would not reach the remaining questions.