799 S.E.2d 318

**Joshua FAY, Appellant-Respondent,**

**v.**

**TOTAL QUALITY LOGISTICS, LLC, Respondent-Appellant.**

**Appellate Case No. 2014-001828**
**Opinion No. 5471**

Court of Appeals of South Carolina.

Heard November 17, 2016
Filed March 1, 2017
Rehearing Denied May 26, 2017

Alice F. Paylor and Rene Stuhr Dukes, both of Rosen Rosen & Hagood, LLC, of Charleston, for Appellant-Respondent.

Robert Daniel Moseley, Jr. and Peter Andrew Rutledge, both of Smith Moore Leatherwood LLP, of Greenville, for Respondent-Appellant.

THOMAS, J.:

This cross-appeal concerns the validity of an employment agreement entered into by Appellant-Respondent Joshua Fay and Respondent-Appellant Total Quality Logistics, LLC (TQL). Fay initiated this action by seeking a declaratory judgment that the employment agreement was invalid and unenforceable. The parties filed cross summary judgment motions, and the circuit court partially granted TQL's motion finding the employment agreement was valid and enforceable. However, the circuit court denied TQL's motion as to its counterclaims for breach of the employment agreement and misappropriation of trade secrets. Fay appeals the circuit

court's determination that the employment agreement was valid and argues the circuit court erred by finding Ohio law applied to the agreement and the agreement was valid and enforceable under either Ohio or South Carolina law. TQL appeals the circuit court's denial of summary judgment on its counterclaims and argues there was no genuine issue of material fact regarding Fay's breach of the agreement. We reverse the circuit court's partial grant of summary judgment to TQL, and we dismiss TQL's cross-appeal.

**FACTS/PROCEDURAL HISTORY**

TQL is based in Ohio and provides motor carrier transport and related services including logistics and brokerage services. TQL offered Fay employment as a Logistics Sales Account Executive in November 2012. The offer of employment informed Fay he was "required to complete, sign, and return a TQL non-compete/non-disclosure agreement on [his] first day of employment." Fay accepted the offer of employment and began working in December 2012. Fay admitted he signed TQL's Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement (the Agreement) on his first day of employment.

The Agreement contained noncompete and nondisclosure provisions and claimed it was to be "interpreted and enforced under the laws of the State of Ohio." The purported nondisclosure provisions were contained primarily in paragraph four. It prohibited Fay from disseminating or making use of "Confidential Information" without TQL's permission. By signing the Agreement, Fay agreed "all information disclosed to [him] or to which [he had] access during the period of his ... employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential." Additionally, the Agreement defined Confidential Information as

[TQL's] operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers, potential Customers, Motor Carriers, and suppliers; information about transactions,

pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers, and financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures.

The nondisclosure provisions did not include a time restriction and provided it was binding "at all times" following Fay's employment with TQL. Additionally, the nondisclosure provisions provided its restrictions were "not intended and shall not be construed to prohibit [Fay] from disclosing or using the general skills and knowledge [he] acquired as an employee of TQL." Paragraph six stated that if Fay engaged in an employment relationship with a Competing Business "in a position similar" to his position with TQL it would "necessarily and inevitably result in [Fay] revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL." A "Competing Business" included "any person, firm, corporation, or entity that is engaged in the Business anywhere in the Continental United States." The Agreement defined the "Business" as "providing motor transport and related services, including third-party logistic[s] services, motor freight brokerage services and supply-chain management services."

In June 2013, TQL terminated Fay, and he founded JF Progressions, LLC (JF) through which Fay allegedly worked as the "exclusive shipping agent" for The Brandt Companies, LLC (Brandt). According to Fay, in August 2013, TQL notified him it intended to pursue legal action if he failed to "cease working as a broker" for Brandt through JF. As a result, Fay acted proactively and filed this action against TQL in November 2013, seeking a declaratory judgment that the Agreement was invalid and unenforceable. The complaint asserted the Agreement lacked a geographical limitation and, if enforced, would prevent Fay "from working in the truck shipping industry in any capacity in the entire United States." The complaint

generally alleged the Agreement was "overly broad and not necessary for the reasonable protection" of TQL.

In its answer, TQL asserted counterclaims alleging Fay misappropriated trade secrets and breached the Agreement, which it claimed was valid and enforceable. TQL also sought injunctive relief. In December 2013, Fay filed a motion for judgment on the pleadings or, alternatively, summary judgment. Fay asserted the Agreement was invalid and unenforceable and, as a result, he was entitled to summary judgment on his declaratory judgment action and TQL's counterclaims for breach of contract and misappropriation of trade secrets. In January 2014, TQL filed a motion for summary judgment and argued the Agreement was reasonable and enforceable.

TQL offered several affidavits from one of its managers, Hillary Kotlarz. Kotlarz's third affidavit attempted to define the contours of the Agreement. Kotlarz asserted the Agreement did not prevent Fay from working in all capacities in the transportation industry. Kotlarz contended the nondisclosure provision does not prohibit Fay from utilizing all information he learned while working for TQL. The affidavit listed several positions Fay could have held in the transportation industry and many examples of nonconfidential information he learned while working for TQL.

During the circuit court's hearing, Fay argued the court must invalidate the Agreement if it was contrary to South Carolina public policy even if Ohio law applied. He asserted the Agreement violated public policy because it was "overbroad when considering TQL's interest." Fay contended the nondisclosure provisions were in effect noncompete provisions because the Agreement defined "confidential information as every piece of information given to the employee." Because the nondisclosure provision was actually a noncompete provision, according to Fay, it had to comport with the public policy of South Carolina regarding noncompete agreements.

In April 2014, the circuit court found the Agreement was valid under Ohio law and did not offend the public policy of South Carolina. Applying Ohio law, the circuit court explained the Agreement's restrictions were no greater than required for TQL's protection, did not impose undue hardship on Fay, and were not injurious to the public. Thus, the circuit court

granted TQL's motion for summary judgment to the extent it sought a finding the Agreement was valid and enforceable. In response to a Rule 59(e), SCRCP motion filed by Fay, the circuit court clarified that it did not find Fay breached the Agreement and denied TQL's motion for summary judgment with regard to breach of the Agreement and misappropriation of trade secrets. This cross-appeal followed.

## STANDARD OF REVIEW

The circuit court should grant a motion for summary judgment when the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. An appellate court "reviews the grant of a summary judgment motion under the same standard as the [circuit] court." *Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008). "When determining if any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party." *Id.* To defeat a motion for summary judgment, a plaintiff must show "a genuine issue of material fact exists for each essential element of the plaintiff's claim." *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 358, 650 S.E.2d 68, 71 (2007).

## FAY'S APPEAL

Fay argues the circuit court erred by finding the Agreement was valid and enforceable because it violated the public policy of South Carolina. Fay argues the nondisclosure provisions located in paragraphs four, six, and seven were essentially noncompete provisions because they restricted competition, rather than protected confidential information. Fay asserts the circuit court should have held the nondisclosure provisions to the same standard as the noncompete provisions, which included requiring a reasonable time restriction. According to Fay, because the nondisclosure provisions failed to include a reasonable time restriction, the Agreement was unenforceable.

In response, TQL argues the circuit court correctly ruled the Agreement was enforceable because it was valid under Ohio law and did not offend the public policy of South Carolina. TQL argues provisions for nondisclosure of trade secrets do not require time or geographical limitations. TQL

asserts the legislature enacted section 39-8-30 of the South Carolina Code (Supp. 2016) in response to *Muckenfuss* [1] specifically to obviate any requirement for a time restriction for nondisclosure of trade secret provisions. Also, TQL argues the nondisclosure provisions comported with our public policy because they expressly allowed Fay to use "the general skills and knowledge" he acquired while working for TQL.

■ We agree with Fay and reverse the circuit court's grant of summary judgment to TQL because the nondisclosure provisions operated as noncompete provisions and did not contain a reasonable time restriction, which violated the public policy of South Carolina. "Whether a contract is against public policy or is otherwise illegal or unenforceable is generally a question of law for the court." *Milliken & Co. v. Morin*, 399 S.C. 23, 30, 731 S.E.2d 288, 291 (2012). "We review questions of law de novo." *Id.* "South Carolina does not follow the 'blue pencil' rule and, thus, 'restrictions in a [noncompete] clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms.'" *Palmetto Mortuary Transport, Inc. v. Knight Sys., Inc.*, 416 S.C. 427, 434, 786 S.E.2d 588, 591 (Ct. App. 2016) (quoting *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 387 S.C. 583, 588, 694 S.E.2d 15, 18 (2010)).

■ The early common law of England held any agreement restricting a man's right to exercise his trade was void as against public policy because it required him to violate the law. *Milliken*, 399 S.C. at 30–31, 731 S.E.2d at 292. However, there has been some amelioration of this disfavor as the law has developed. *Id.* at 31, 731 S.E.2d at 292. Despite this amelioration, South Carolina courts have maintained that noncompete provisions "are generally disfavored and will be strictly construed against the employer." *Id.* Although we recognize "the legitimate interest of a business in protecting its clientele and goodwill, we are equally concerned with the right of a person to use his talents to earn a living." *Baugh v. Columbia Heart Clinic, P.A.*, 402 S.C. 1, 12, 738 S.E.2d 480, 486 (Ct. App. 2013).

---

1. *Carolina Chem. Equip. Co. v. Muckenfuss*, 322 S.C. 289, 471 S.E.2d 721 (Ct. App. 1996).

■ "Terms in a non-compete agreement may be construed according to the law of another state. But if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement." *Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 366 S.C. 156, 159, 621 S.E.2d 352, 354 (2005). Thus, we may assess the validity of a noncompete agreement under the law of another state, but we must also assess whether the agreement comports with the public policy of South Carolina.

■ In South Carolina, "contracts against competition are held to be unenforceable unless they meet certain criteria ... [because] they constitute a restraint upon trade[,] which is against public policy." *Standard Register Co. v. Kerrigan*, 238 S.C. 54, 71, 119 S.E.2d 533, 542 (1961).

> An agreement's enforceability depends on whether it is necessary for the protection of the legitimate interest of the employer, is reasonably limited in its operation with respect to time and place, is not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood, is reasonable from the standpoint of sound public policy, and is supported by a valuable consideration.

*Rental Unif. Serv. of Florence, Inc. v. Dudley*, 278 S.C. 674, 675–76, 301 S.E.2d 142, 143 (1983). Time restrictions of multiple years have been approved as reasonable. *See id.* (finding a time restriction of three years was reasonable); *Delmar Studios of Carolinas v. Kinsey*, 233 S.C. 313, 319, 104 S.E.2d 338, 341 (1958) (noting a time restriction of two years was reasonable). However, contractual provisions limiting the disclosure of trade secrets "must not be considered void or unenforceable or against public policy for lack of a durational or geographical limitation. S.C. Code Ann. § 39-8-30(D) (Supp. 2016).

■ In this case, the circuit court erred by finding the Agreement comported with South Carolina public policy because its nondisclosure provisions effectively prevented Fay from ever working in a similar capacity for one of TQL's competitors. The nondisclosure provisions in paragraphs four and six operated as noncompete provisions with no reasonable time restriction, which violated the public policy of South Carolina. Paragraph four of the Agreement prevented Fay from revealing or using TQL's Confidential Information "at

any time during the course of his ... employment by TQL, and *at all times thereafter*," unless authorized by TQL. (emphasis added). Subsequently, paragraph six stated that if Fay engaged in an employment relationship with a Competing Business "in a position similar" to his position with TQL it would "necessarily and inevitably result in [Fay] revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL." A Competing Business included "any person, firm, corporation, or entity that is engaged in the Business anywhere in the Continental United States."

Reading paragraphs four and six in conjunction, Fay could never hold a position similar to his position at TQL with any competitor of TQL without violating the Agreement. Holding such a position would "necessarily and inevitably" result in him revealing and using TQL's Confidential Information, which the Agreement prohibited Fay from doing "at all times" after his employment with TQL. Thus, these paragraphs restricted Fay's right to use his talents to earn a living for an indefinite time period, if not forever. The paragraphs were not reasonably limited with respect to time. *See Baugh*, 402 S.C. at 12, 738 S.E.2d at 486 (explaining the court recognizes a business's legitimate interest in protecting its clientele and goodwill but is "equally concerned with the right of a person to use his talents to earn a living"); *id.* (requiring a noncompete agreement to be reasonably limited "with respect to time").

Although these paragraphs related ostensibly to nondisclosure of TQL's Confidential Information and, thus, may not have required a reasonable time restriction under *Milliken* and section 39-8-30(D), the paragraphs were so broad they effectively became a noncompete provision and required a reasonable time restriction. *See Milliken*, 399 S.C. at 38–39, 731 S.E.2d at 296 (noting confidentiality agreements do not necessarily require reasonable time restrictions); *Muckenfuss*, 322 S.C. at 293–94, 471 S.E.2d at 723 ("Despite its designation as a 'Covenent Not to Divulge Trade Secrets,' this section would substantially restrict Muckenfuss's competitive employment activities. Because it basically has the effect of a covenant not to compete, we must subject it to the same scrutiny as a covenant not to compete."). As described above, paragraphs four and six conspired to restrict Fay's employment

activities after leaving TQL, rather than merely prohibiting Fay from revealing TQL's trade secrets or Confidential Information. Because the nondisclosure provisions had the effect of a covenant not to compete, they required a reasonable time restriction like any other noncompete agreement.

■ As to TQL's argument that section 39-8-30 extinguished any requirement found in *Muckenfuss* for a reasonable time restriction, our supreme court recently reaffirmed this Court's finding in *Muckenfuss* that nondisclosure provisions having the same effect as a noncompete provision are subject to the same scrutiny as noncompete provisions. *See Milliken*, 399 S.C. at 33 n.4, 731 S.E.2d at 293 n.4 ("If upon review, [nondisclosure agreements] are so broad as to effectively become [noncompete] agreements, then they are subject to the higher burden."). Thus, we reject TQL's argument the Agreement's nondisclosure provisions did not require a reasonable time restriction based on section 39-8-30.

With regard to TQL's claim the nondisclosure provisions did not act to restrict Fay's employment opportunities because paragraph four expressly allowed Fay to use "the general skills and knowledge" he acquired while working for TQL, we disagree. Although this provision allowed Fay to use general skills and knowledge, paragraphs four and six nonetheless prohibited Fay from ever holding a similar position with a competitor of TQL without breaching the Agreement. Such a prohibition was a restriction on Fay's ability to earn a living and was subject to the same level of scrutiny as other noncompete provisions despite the possibility of allowing him to use the general skills and knowledge he acquired from TQL.

■ We acknowledge other sections of the Agreement contained a time restriction of one year, which otherwise may have been reasonable. However, we cannot infer this one-year restriction into paragraphs four and six because paragraph four expressly contains a time limit of "at all times." Thus, the one-year restriction from paragraph nine cannot replace the express time restriction in paragraph four. Furthermore, under our case law, it would violate public policy for this Court or the circuit court to accept the invitation of paragraph twelve and rewrite portions of the Agreement or insert a reasonable time restriction for paragraphs four and six because it would add a term to the Agreement to which the

parties neither negotiated nor agreed.[2] *See Poynter Invs.*, 387 S.C. at 588, 694 S.E.2d at 18 ("[I]n South Carolina, the restrictions in a [noncompete] clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms."); *Stonhard*, 366 S.C. at 160, 621 S.E.2d at 354 ("The agreement fails to limit the covenant to a particular geographical area. To add and enforce such a term requires this [c]ourt to bind these parties to a term that does not reflect the parties' original intention. Therefore, we hold that the covenant, despite any reformation, is void and unenforceable as a matter of public policy."). Accordingly, because the Agreement contained provisions that were in effect noncompete provisions without a reasonable time restriction, we reverse the circuit court's grant of summary judgment to TQL finding the Agreement was valid and enforceable.

## TQL'S APPEAL

TQL argues the circuit court erred by refusing to grant summary judgment on its counterclaims alleging Fay

---

2. Although the concurrence is well-reasoned and we agree with the general position that a noncompete agreement may be interpreted and modified under the laws of another state pursuant to a valid choice of laws provision, we find it unnecessary to assess the enforceability of the Agreement under Ohio law in this case. We acknowledge our supreme court in *Stonhard* analyzed whether the agreement could be reformed under New Jersey law to add a previously nonexistent geographical term. *See id.* at 159–60, 621 S.E.2d at 353–54. However, the *Stonhard* court subsequently concluded that, even if the agreement could be reformed under New Jersey law to add a geographical term, the agreement would still be unenforceable in South Carolina because adding such a term violates our public policy. *See id.* at 161, 621 S.E.2d at 354 ("Even if the agreement could be reformed in this manner under New Jersey law, the agreement would be unenforceable in South Carolina because the very act of adding a term not negotiated and agreed upon by the parties violates public policy."). Likewise, we find the very act of adding a time restriction to paragraphs four and six of the Agreement, even if such a term could be added under Ohio law, would be unenforceable in South Carolina because adding a time restriction not negotiated by the parties would violate our public policy. *See Poynter Invs.*, 387 S.C. at 587–88, 694 S.E.2d at 17 ("[T]his Court has held that it would violate public policy to allow a court to insert a geographical limitation where none existed."); *Lowcountry Open Land Tr. v. Charleston S. Univ.*, 376 S.C. 399, 410, 656 S.E.2d 775, 781 (Ct. App. 2008) ("Courts only have the authority to specifically enforce contracts that the parties themselves have made; they do not have the authority to alter contracts or to make new contracts for the parties.").

breached the Agreement. TQL claims there was no genuine issue of material fact regarding whether Fay violated the terms of the Agreement. We dismiss TQL's appeal because a party may not appeal the denial of summary judgment. The denial of summary judgment is not appealable even when accompanied by a proper appeal of the grant of summary judgment on a separate issue. *Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 167–68, 580 S.E.2d 440, 443–44 (2003); *see also AJG Holdings LLC v. Dunn*, 392 S.C. 160, 167, 708 S.E.2d 218, 222 (Ct. App. 2011) ("Because the circuit court *denied* summary judgment, we are prohibited from reviewing that ruling pursuant to [*Olson*].").

## CONCLUSION

Based on the foregoing, we reverse the circuit court's partial grant of summary judgment to TQL because the Agreement violated the public policy of South Carolina. We dismiss TQL's cross-appeal because a party may not appeal the denial of summary judgment.

**REVERSED IN PART AND DISMISSED IN PART.**

WILLIAMS, J., concurs.

GEATHERS, J., concurring in a separate opinion:

I concur with the majority's dismissal of Total Quality Logistics, LLC's (TQL's) cross-appeal and with its decision to reverse the circuit court's grant of partial summary judgment to TQL. However, I write separately because I believe this court must first apply Ohio law in determining the enforceability of the non-compete agreement before considering whether it violates South Carolina public policy. Through the mechanism of first applying the law of the state governing the agreement, this court could potentially modify a provision that, if left unmodified, would violate South Carolina public policy. Furthermore, if we fail to follow the foregoing approach, the choice of law provision agreed to by the parties in the non-compete agreement would be rendered meaningless.

Fay signed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement, which stated it was to be "interpreted and enforced under the laws of the State of Ohio." Paragraph nine of the agreement prohibited Fay from owning

or working for a Competing Business—an entity providing motor transport or logistics services anywhere in the continental United States—for a period of one year after the termination or cessation of his employment with TQL. The agreement also contained a broad definition of Confidential Information and stated all information Fay received or had access to during his employment at TQL was "presumed to be Confidential Information." Pursuant to section four of the agreement, Fay was prohibited from disclosing or using any of TQL's Confidential Information during the course of his employment at TQL "and at all times thereafter." Section six of the agreement prohibited Fay from working "in a position similar to [his] position at TQL" because such employment "would necessarily and inevitably result in [Fay] revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL."

I agree with the majority that the nondisclosure portion of the agreement should be treated as a non-compete agreement. I also agree with the majority's conclusion that the nondisclosure agreement is overly broad because it prohibits Fay from ever working "in a position similar" to his position at TQL. However, to reach this conclusion, I believe this court must first determine whether the agreement can be modified under Ohio law in light of the agreement's choice of law provision before considering whether the agreement violates South Carolina public policy. *See Team IA, Inc. v. Lucas*, 395 S.C. 237, 248, 717 S.E.2d 103, 108 (Ct. App. 2011) ("Choice of law clauses are generally honored in South Carolina.").

I acknowledge South Carolina does not follow the "blue pencil" rule and does not permit courts to rewrite or modify parties' agreements, while Ohio, as discussed below, permits courts to make reasonable modifications. *See Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 387 S.C. 583, 588, 694 S.E.2d 15, 18 (2010) ("[I]n South Carolina, the restrictions in a non-compete clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms."). Although our supreme court has explicitly prohibited some modifications, *see Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 366 S.C. 156, 160, 621 S.E.2d 352, 354 (2005) (holding it would violate public policy to allow a court to insert an entirely new geographical term when none

existed), I believe modifying an agreement pursuant to the law of the state governing the agreement would not automatically violate South Carolina public policy. *See Team IA, Inc.*, 395 S.C. at 249, 717 S.E.2d at 109 ("[A] choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." (quoting *Nucor Corp. v. Bell*, 482 F.Supp.2d 714, 728 (D.S.C. 2007))); *see also* 16 Am. Jur. 2d *Conflict of Laws* § 74 (2009) ("Enforcement of a contract or a contract provision [that] is valid by the law governing the contract will not be denied on the ground of public policy unless a 'strong case' for such action is presented; mere dissimilarity of law is not sufficient for application of the public policy doctrine." (footnote omitted)). Thus, I believe Ohio law should be applied in this case.

"Terms in a non-compete agreement may be construed according to the law of another state." *Stonhard, Inc.*, 366 S.C. at 159, 621 S.E.2d at 353. "But if *the resulting agreement* is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement." *Id.* (emphasis added).

In *Stonhard*, our supreme court considered whether a non-compete agreement that did not contain a geographical limitation could be blue penciled according to New Jersey law and then enforced in South Carolina. *Id.* Before considering South Carolina public policy, our supreme court first attempted to modify the agreement pursuant to New Jersey law based on the agreement's choice of law provision. *Id.* at 159–60, 621 S.E.2d at 353–54. Our supreme court found that under New Jersey law, a court may blue pencil a non-compete agreement to make the terms reasonable and noted that if the agreement contained an overly broad geographical limitation, "a court may decrease the limitation to make it reasonable, while at the same time continuing to enforce other terms in the agreement." *Id.* at 159–60, 621 S.E.2d at 353. Our supreme court further noted the non-compete agreement it was reviewing did not contain a geographical limitation, and our supreme court was "unable to find a single case from New Jersey in which a court ha[d] added a geographical term when one was previously omitted." *Id.* at 160, 621 S.E.2d at 354. Thus, it determined the agreement could not be blue penciled "to add an entirely new term to which neither of the parties agreed." *Id.* Only after determining New Jersey law would not permit the

addition of a geographical term when the parties had not included one did our supreme court consider whether the non-compete agreement violated South Carolina public policy. *Id.* It stated, "Because we find no term that may suffice as a substitute for a geographical restriction so as to render the covenant reasonable, we hold that the covenant is unenforceable as against public policy." *Id.*

In Ohio, "a covenant not to compete [that] imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests." *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975). "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Id.* "Courts are empowered to modify or amend employment agreements to achieve such results." *Id.* Ohio's "reasonableness" test "permits courts to fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all the factors comprising 'reasonableness' in the context of employee covenants." *Id.* at 546–47.

However, "[t]he use of permissive language in the *Raimonde* decision implies that modification is within the discretion of the trial court." *Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 69 Ohio App.3d 753, 591 N.E.2d 1265, 1270 (1990). In *Kingsland*, the Court of Appeals of Ohio considered a non-compete agreement that contained no temporal or geographic limitations. *Id.* at 1269–70. The *Kingsland* court found the lack of temporal and geographic limitations gave "the covenant a greater restraint than necessary to protect [the employer] and impose[d] an undue hardship on" the employee. *Id.* at 1269. The Court of Appeals of Ohio found that although Ohio courts have "the authority to refashion an unduly restrictive non-competition clause to make it reasonable," a court may decline to modify the restriction if it "could not easily modify existing provisions but might be required to rewrite the entire covenant." *Id.* at 1269–70; *see also LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 817 N.E.2d 439, 446–47 (2004) (finding the modifications requested by the employer "would entail substantial changes to the agreement"

and, thus, the trial court did not abuse its discretion in declining to modify the restrictive covenants).

In South Carolina, "public policy demands [non-compete agreements'] scope be subject to judicial review for reasonableness," which includes evaluating "whether the restriction is reasonable in that it is no greater than necessary to protect the employer's legitimate interests, and it is not unduly harsh in that it curtails the employee's ability to earn a living." *Milliken & Co. v. Morin*, 399 S.C. 23, 33, 731 S.E.2d 288, 293 (2012). "The reason that contracts against competition are held to be unenforceable unless they meet certain criteria[ ] is that they constitute a restraint upon trade[,] which is against public policy." *Standard Register Co. v. Kerrigan*, 238 S.C. 54, 71, 119 S.E.2d 533, 542 (1961).

Applying the *Stonhard* approach to the instant matter, I believe the agreement, which prohibits Fay from working in a similar position to the one he held at TQL without a time limitation, would not pass Ohio's "reasonableness" test because it imposes an undue hardship on Fay and creates "a greater restraint than necessary to protect" TQL. *See Kingsland*, 591 N.E.2d at 1269. Although this court could modify the agreement pursuant to Ohio law, I believe we should decline to do so because the agreement could not easily be modified and this court would be required to rewrite paragraphs four and six, as well as potentially narrow the scope of the Confidential Information definition. I believe it would be difficult for this court to modify these provisions in a way that would ensure we are honoring the intent of the parties. *See Raimonde*, 325 N.E.2d at 547 (permitting courts to fashion reasonable contracts "between the parties, *in accord with their intention at the time of contracting*" (emphasis added)).[3] I believe this court would also be prevented from severing certain portions of the agreement pursuant to the severability clause because of the interrelated nature of the paragraphs. Because the agreement cannot easily be modified, I believe the agreement is unreasonable and unenforceable under Ohio law. Further-

---

3. The *Stonhard* court's rationale for determining that adding an entirely new term would violate public policy was that adding a new term would "bind [the] parties to a term that [did] not reflect the parties' original intention." 366 S.C. at 160, 621 S.E.2d at 354; *see Poynter Invs., Inc.*, 387 S.C. at 587–88, 694 S.E.2d at 17 ("[T]his [c]ourt has held that it would violate public policy to allow a court to insert a

more, I believe the unmodified agreement is unreasonable according to South Carolina public policy because it imposes greater restrictions than necessary to protect TQL's legitimate interests and curtails Fay's ability to earn a living. *See Standard Register Co.*, 238 S.C. at 71, 119 S.E.2d at 542 ("The reason that contracts against competition are held to be unenforceable unless they meet certain criteria[ ] is that they constitute a restraint upon trade[,] which is against public policy."). Therefore, I would reverse the circuit court's grant of partial summary judgment to TQL.

---

geographical limitation [when] none existed."). Similarly, Ohio courts are only permitted to make modifications that are "in accord with [the parties'] intention at the time of contracting." *See Raimonde*, 325 N.E.2d at 547.